# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1907.

---

*(Continued from Volume 204)*

---

THE STATE ex rel. ROSE et al., Appellants, v. JOB et al.

Division Two, June 11, 1907.

1. **QUO WARRANTO: Amending Pleadings.** In a *quo warranto* brought at the relation of private citizens the rules of practice in other civil cases apply, and it is not error for the trial court to permit respondents to file an amended return and answer.

2. **SCHOOL DISTRICTS: Arbitrators: Witnesses: Oath.** The statute does not require arbitrators appointed by the county school commissioner to pass upon an attempted change in the boundaries of school districts, to be sworn, nor witnesses heard by them, and the courts will not write such a requirement into the statute.

3. **———: Change of Boundary: Notice.** The notices of a contemplated change in the boundary of a school district should inform the qualified voter that his district is to be affected by the change and what particular territory his district would lose or gain thereby, and if it does that it is sufficient. And a notice, which had as its object to give notice of the consolidation of two districts and part of another, and had attached to it a definite petition for the change, was such a notice, and authorized the voters to vote on the consolidation.

4. **———: State Superintendent: Interpretation of Statutes.** A practical construction given a statute by the State Superintendent, in reference to the sufficiency of a petition for a change

1    (1)

in the boundary of a school district, upon whom is imposed by statute the duty to send out printed instructions on the subject, while not conclusive upon the courts, is entitled to great weight.

5. ———: **Change in Boundary: Notice: Signers.** The statute does not require the petition for a change in the boundary line of two or more school districts, to be signed by ten qualified voters residing in each district to be affected by the change, nor does it require that there be a separate petition in each district signed by ten qualified voters resident therein, but it does require the clerk of any of the districts affected to give notice of the proposed change on the reception of a petition signed by ten qualified voters resident in any one of the districts affected.

6. ———: ———: ———: **Disposition of Property.** It is not necessary that the notices of the consolidation of school districts contain a recital of what disposition is to be made of the school property in the old district, unless the new district intends to surrender to the old district all claim thereon for its share of the property.

7. ———: **Purpose of Election: Consolidation or Change of Boundary.** Where the proceeding to consolidate school districts was inaugurated under the statute and predicated upon it, and the matter went to the county commissioner and his board of arbitrators, to settle the dispute or difference of opinion that had arisen between the districts or parts thereof affected by the proposed change, their decision, when called in question in *quo warranto*, is final, although the report of the arbitrators may not strictly harmonize with the scheme or questions submitted to the school meetings, and although it cannot be definitely ascertained whether the proceeding for a change in the boundary line had for its object the consolidation of two or more districts, or whether the question in one of them was to attach or detach a portion thereof. The board of arbitrators having jurisdiction to determine the dispute or differences submitted to them, the court will not, by writ of *quo warranto*, review errors of judgment in their report.

8. ———: **Disputes: Liberal Construction of Statutes.** The provisions of the statutes providing for the settlement of disputes arising in the organization of school districts or in changing the boundary lines of existing districts, should receive at the hands of the courts a reasonable and liberal construction. An insistence upon a strict and technical compliance would defeat the purposes of the statutes, and impair the school system itself, since they contemplate that the burdens they impose will rest upon plain and worthy citizens not learned in the law.

State ex rel. v. Job.

Appeal from Cass Circuit Court.—*Hon. William L. Jarrott*, Judge.

AFFIRMED.

*Charles W. Sloan, D. C. Barnett* and *Given & Glenn* for appellants.

(1) Relators were entitled to judgment of ouster on failure to answer October 3, 1903. A sufficient answer and return was not filed until January 25, 1904. State ex rel. v. Giovanomi, 59 Mo. App. 43; State ex rel. v. Vallins, 140 Mo. 535; R. S. 1899, sec. 4460. (2) *Qua warranto* is the proper proceeding to test the right of school directors to hold office, and thereby test the validity of the district's formation. R. S. 1899, sec. 4457; State ex rel. v. Rose, 84 Mo. 198; State ex rel. v. Stone, 152 Mo. 202; State ex rel. v. McSpadden, 137 Mo. 628; State ex rel. v. McReynolds, 61 Mo. 203; State ex rel. v. Scott, 17 Mo. 521; State ex rel. v. Campbell, 120 Mo. 396; School District v. Smith, 90 Mo. App. 215. (3) Defendants are required to plead and prove directly and positively all the facts necessary to establish the title to the office they claim, and failure to do so entitles complainants to a judgment of ouster. The burden is on defendants. 17 Ency. Plead. and Prac., sec. 3, pp. 435, 468, 469, 472; 19 Am. and Eng. Ency. Law, 682; State ex rel. v. McCann, 88 Mo. 390; State ex rel. v. Lund, 167 Mo. 243; State ex rel. v. Powles, 136 Mo. 380; State ex rel. v. Meek, 129 Mo. 436; State ex rel. v. Steers, 44 Mo. 226; State ex rel. v. Coffee, 59 Mo. 67; State ex rel. v. Fleming, 147 Mo. 1. (4) Estoppel is not properly pleaded. Shields v. McClure, 75 Mo. App. 641; State v. Vail, 53 Mo. 97; Goresha v. Levering Co., 146 Mo. 436; State v. Towers, 153 Mo. 111; Orick v. School District, 125 Mo. 444; Thornberg v. School District, 175 Mo. 12. (5) Neither arbitrators nor witnesses were sworn. (a) The board

of arbitration is a judicial body. R. S. 1899, sec. 9742; School District v. Burris, 84 Mo. App. 666; State ex rel. v. Denny, 94 Mo. App. 565; State ex rel. v. Wilson, 99 Mo. App. 677. (b) Officers (legislative, executive and judicial) must be sworn before entering on their duties. Constitution, sec. 6, art. 14; State ex rel. v. Stine, 120 Mo. 432; State ex rel. v. Bees, 135 Mo. 333; State ex rel. v. Rombauer, 101 Mo. 502; State ex rel. v. Hill, 152 Mo. 235. (c) There is no proof that arbitrators were disinterested men, resident taxpayers of Cass county, Missouri. Sutton v. Cole, 155 Mo. 206; State ex rel. v. Wilson, 99 Mo. App. 680; R. S. 1899, sec. 9742. (d) A decision based on evidence of witnesses not under oath ought not to stand. No rights, privileges or immunities should be abridged without due process of law. 1 Greenleaf on Evidence, sec. 328; Constitution, sec. 30, art. 2; Jones v. Yore, 142 Mo. 38. (6) The proceedings leading up to the election held April 7, 1903, and the action of the arbitration board did not contain the regularity required by law to give validity to the judgment of said arbitrators. (a) The petition and notice must be explicit and comprehensive in the proposition submitted. Must include the disposition of the school house and other property of the old districts. R. S. 1899, secs. 9742, 9744, 9745; School District v. School District, 94 Mo. 618; State ex rel. v. Hill, 152 Mo. 240; State ex rel. v. Riley, 85 Mo. 156; State ex rel. v. Smith, 90 Mo. App. 223; School District v. Neal, 74 Mo. App. 557. (b) The notices made no disposition of the part of district 3-44-33 not included in the boundaries of the pretended consolidated district. State ex rel. v. Hill, 152 Mo. 240; State ex rel. v. Stone, 152 Mo. 211; State ex rel. v. Smith, 90 Mo. App. 224. (c) It is apparent the whole scheme is an effort of the little town of Cleveland to improve by building a good school house and pay for it by the "acquisition of territory" by en-

croachment upon the country districts. This is pro-
hibited by statute. R. S. 1899, sec. 9742; State ex rel.
v. Denny, 94 Mo. App. 564; State ex rel. v. Heege, 37
Mo. App. 340. (d) Report of arbitrators does not
harmonize with the scheme of the election and ques-
tion submitted at election of April 7, 1903. Was the
proceeding for change of boundary line, consolidation
to establish city school, or was the question in district
3-44-33, to attach or detach portions of the district,
or what? State ex rel. v. Denny, 94 Mo. App. 565;
State ex rel. v. Burris, 84 Mo. App. 658; State ex rel.
v. Smith, 90 Mo. App. 224; School District v. Neal, 74
Mo. App. 557; Shattuck v. Phillips, 78 Mo. 81; Laws
1901, p. 249. (e) The arbitrators were appointed the
day they acted, without notice to the districts affected,
or chance for interested parties to ascertain whether
arbitrators were "disinterested men, resident tax-
payers," etc., and no proof that they were qualified.
Royce v. Barr, 57 Mo. 290; George v. Middough, 62
Mo. 550.

*W. D. Summers* and *A. A. Whitsitt* for respond-
ents.

(1) A writ of *quo warranto* was originally a writ
out of chancery, governed by the common law; this
has been changed by statute, and there has since 1855
been no difference in the right to amend a return or
answer, in a proceeding of this character, in the circuit
court, and the right to amend an answer in any kind of
civil suit. State ex inf. v. Beechner, 160 Mo. 78; State
ex rel. v. Meek, 129 Mo. 431; State ex rel. v. Fleming,
158 Mo. 558; State ex rel. v. Kupferle, 44 Mo. 154;
State ex rel. v. McClain, 187 Mo. 409; State ex rel. v.
Town of Mansfield, 99 Mo. App. 146; 17 Ency. Pl. and
Prac., 457; McQuillin, Pl. and Pr., 517. (2) The im-
portant thing for the voter to know is, how his district
is to be affected by the formation of the new district

or change of boundary line, and what particular territory his district would lose in the creation of the new one, or gain as the case might be. And statutes like this should be construed with reasonable liberality. State ex rel. v. Gibson, 78 Mo. App. 175; State ex rel. v. Hill, 152 Mo. 240. The finding of the commission or board of arbitration is judicial in character. School District v. Burriss, 84 Mo. App. 666; State ex rel. v. Gibson, 78 Mo. App. 170. To disturb a judgment by *quo warranto* all the essential infirmities and iniquities must be alleged and proven with the same strictness required in a bill in equity to annul a final judgment of a court of record. State ex rel. v. Fleming, 158 Mo. 558. And such proceeding is valid though the entire corporate entity of one or more of the old districts may be destroyed. State ex rel. v. Hill, 152 Mo. 235. (3) There is no statute requiring the board of arbitration to be sworn. State ex rel. v. Gibson, 78 Mo. App. 172. (4) The record shows that by reason of the laches on the part of relators, they allowed a condition to exist for such time which would make it inequitable to grant such relief, especially as they stood by and saw and knew of the steps to erect a building, levy a tax, etc. Stamper v. Roberts, 90 Mo. 683; State ex rel. v. Town of Mansfield, 99 Mo. App. 146; State ex rel. v. Huff, 105 Mo. App. 354; State ex rel. v. Town of Westport, 116 Mo. 583; L. & M. Water Co. v. City, 163 Mo. 252; Throop on Pub. Officers, sec. 782; 17 Ency. Pl. and Pr., 448; Howell v. Shannon, 90 N. W. 410; 2 Spelling on Extra. Ord. Remedies, secs. 1797, 1837, 1840. (5) The burden is on the relators, and *quo warranto* cannot be used to correct matters of appeal. State ex rel. v. Beechner, 160 Mo. 78; State ex rel. v. Kupferle, 44 Mo. 154; State ex rel. v. Fleming, 158 Mo. 558. (6) The relators contend that the petition should be signed by ten qualified voters, residing in each district affected. We do not so construe the stat-

ute, and we think the construction given by the State Superintendent of Schools, under the advice of the Attorney-General, for years back, sent out for guidance to all school districts in the State, and which was received and followed by respondents in this case, is the correct interpretation of the statute; in fact, it uses the wording of the statute. R. S. 1899, sec. 9742. (7) Relators' contention that the notices are insufficient is also unsupported by the record, and they utterly fail to point out such insufficiency. State ex rel. v. Eden, 54 Mo. App. 31.

FOX, P. J.—This cause is now pending before this court upon appeal from a judgment of the circuit court of Cass county, Missouri, in favor of the respondents. This proceeding is one in which the extraordinary writ of *quo warranto* is invoked to test the legality of the organization of a school district and to oust certain alleged officials from the exercise of certain duties, functions and privileges under and by virtue of such illegal organization. To fully appreciate this controversy it is essential that we reproduce the pleadings. Relators on the 7th day of September, 1903, filed in the circuit court of Cass county a petition, which, omitting formal parts, is as follows:

"Relators state that they are and were at the times hereinafter mentioned, resident taxpayers, freeholders and voters of the school district No. 5 in township 45 of range 33, of Cass county, Missouri, and that they prosecute their action for themselves and other resident taxpayers and voters of said school district, and that they together constitute a majority of the voters and taxpayers of said school district. That relators C. H. Von Volkenburg and Andrew Alderson, and defendant Harvey Corey are the duly elected and qualified directors of such school district No. 5. That on the first Tuesday in April, 1903, as the law directs,

there was had a regular annual school meeting at the proper place and in said district, by the voters thereof, who, after assembling at the school house in said district, organized by electing Frank Ink as chairman and G. A. Rose as secretary of said meeting. That at said meeting there was an attempted or pretended submission to the voters there assembled of a proposition to consolidate said district with district No. 3, township 45, range 33, and a portion of district No. 3, township 44, range 33, so as to make one district out of two and a part of the third district; that in the pretended or attempted submission of said question, and in the preliminary steps thereto, parties asking therefor in their attempt to lay out by metes and bounds the proposed line of division and consolidation, wrongfully and incorrectly left out a portion of said district No. 3, township 44, range 33, as then existing, having less than the required area of land containing therein less than twenty children of school age, and entitled to the benefits of the public schools; that after the pretended submission of said question of consolidation, when it was learned that the proposition had failed to carry, there was an attempt to appeal from the decision of the voters voting at said election upon said proposition, to the Hon. A. A. Wirt, county school commissioner, of Cass county, Missouri. And in furtherance of said attempt, there was sent up for the consideration of said commissioner no such records of the several school districts' meetings as would authorize said school commissioner to recognize an appeal.

"Your relators aver that upon the record made by said several school districts in the petition for change and notices therefor, at said annual meetings, the school commissioner has no authority or right, nor was he under any duty or obligation to act upon or consider said appeal or attempted appeal, for the reason that said petition, notice and record, if any pro-

duced or made, showed no authority or right in said annual meeting to vote upon a proposition to consolidate said two and part districts, no right to vote for attaching and detaching portions of said district No. 3, township 44, range 33, nor that the law had been complied with in the attempted submission of said question, nor that the school commissioner had any jurisdiction to try and determine the question, attempted to be presented to him. That notwithstanding the lack of authority or right, and the want of jurisdiction in the same, the school commissioner took up and considered and attempted to pass upon and formulate a judgment in the matter, and consolidated said two 'and a part districts in a manner not petitioned for and along lines which no notice was properly posted and on which the several districts did not vote.

"That the judgment of said commissioner and his pretended board of arbitrators was delivered to the district clerks of all said districts and is as follows:

" 'Harrisonville, Mo., April 18, 1903.

" 'Board of Arbitrators, composed of A. A. Wirt, county school commissoner of Cass county, and W. S. Bryan, G. M. Summers, A. B. Bohon and M. E. Halcomb, four disinterested citizens resident taxpayers of Cass county, Missouri, appointed by A. A. Wirt, school commissioner, as provided by the Revised Statutes of Missouri of 1899, after the annual meeting of P. R. Brown, W. G. Edwards, C. C. Young, M. B. Job, J. E. Ellis, C. S. Shaw, H. C. Hall, D. W. McClarnon, T. T. Maxwell, W. H. Edelen, R. E. Laffoon, A. C. Jones and H. W. Williams, and others, petitioners, voters and resident taxpayers of school districts mentioned to be affected by the proposition voted upon and appealed from, met at Harrisonville, Missouri, on the 18th day of April, 1903, at one o'clock at the circuit court room in Cass county court house, by agreement of appellants and the objecting citizens

and their attorneys. The board of arbitrators was. called to order by A. A. Wirt, county school commissioner, and the board of arbitrators then took up the matter of appeal from the specified petition and notices posted in said districts, being the vote to consolidate school districts No. 5, township 45, range 33, in Cass county, Missouri, known as Mayflower school district, and school district No. 3, township 44, range 33, in Cass county, Missouri, known as Glenwild school district, and school district No. 3-45-33, Cass county, Missouri, known as Hazel Hill school district, and to form a new district out of said old district, and detached parts of said districts No. 3, township 44, range 33, Cass county, Missouri, and attach same and form a new district with the boundary line as follows:.

" 'Commencing at the northwest corner of the southwest quarter of the southwest quarter of section 17, township 45, range 33, in Cass county, Missouri, running thence south to the southwest corner of lot No. 3, in the northwest quarter of section 6, township No. 44, range 33, thence east to the southeast corner of lot 3, in the northwest quarter of section 4, township 44, of range 33, thence north one-fourth mile to the township line between townships No. 44 and township 45, thence east to the southeast corner of the southwest quarter of section 33, township 45, range 33, thence north one-fourth mile, thence west one-fourth mile, thence north to the northeast corner of the southeast quarter of the southwest quarter of section 15, township 45, range 33, thence west to the place of beginning.

" 'The described and detached portion being the north side of the following line running through said old district from east to west:

" 'Beginning at the southwest corner of lot 3, in the northwest quarter of section 6, township 44, range 33, thence east to the southeast corner of lot 3, in the

northwest quarter of section 4, thence north one-fourth mile, thence east one-fourth mile to the southeast corner of lot 4, in the northeast quarter of section 4, township 44, range 33, and leaving the part on the south side of the last-named line to be attached to district No. 11, township 44, range 33, and known as the West Line school district, on the south side of said detached portion.

" 'That proposition so voted upon and appealed to the county school commissioner from the vote taken in said district and detached portions of districts and which was by the board of arbitrators taken up for consideration as required by law, was heard and the matter considered on the evidence offered by the appellants and the objectors and the argument of parties in person and by counsel.

" 'The board of arbitrators then considered the matter aforesaid voted on as contained in petition and notices and now put before us then and made the finding as follows: They do find that necessity for the formation of said new district and that said new district be formed hereinabove set forth and the same be consolidated into one new district, so that the lines of said new district or consolidated district will be as first above set forth. And we as a board of arbitration aforesaid, do find and render our findings to the county school commissioner to be by him certified to district clerks of said district affected by this decision.

" 'Witness our hands this 18th day of April, 1903.

" 'A. A. WIRT.
W. S. BRYAN,
A. B. BOHON,
G. M. SUMMERS,
M. E. HALCOMB.'

"That said judgment was an illegal and unauthorized attempt to consolidate said two and a part districts as shown by the face of the petition, notices,

school records and said judgment, the said judgment was null and void, of no force and effect, and did not and could not confer upon the voters or the territory attempted to be so consolidated any rights, power or authority in law or in fact, to organize a school district with boundaries as set forth in said judgment, nor change the districts as constituted and existing at the time of the annual meeting aforesaid. But your relators state the facts to be, that the voters of said pretended new district did unlawfully and without right of law, assemble at the village of Cleveland in said pretended consolidated district on the 26th day of May, 1903, and then and there held a pretended election for the purpose of organizing a district or village consolidated district school as aforesaid, and then and there pretended to elect the defendants herein, as and for school directors for said pretended consolidated school district which they pleased to term and call consolidated district No. 1, of Cass county, Missouri, or by whatever name said new district may go.

"That the defendant and each of them has since said time, and now are unlawfully, wrongfully and without any legal right whatever, usurping, holding and exercising and attending unto the office of school director for said pretended district as aforesaid, and by their acts attempting to set up and maintain a school district over the territory in said district No. 5, township 45, range 33, including the taxable property of relators, without any right, warrant or authority of law so to do.

"Relators further say that the organization of said pretended consolidated District No. 1, of Cass county, Missouri, or by whatever name they pretend to be known and of which defendants assume to be the directors, is without authority of law for the following reasons:

"First. That there is no such records from the

school districts involved presented to the school commissioner as to authorize him to recognize an appeal.

"Second. That said county school commissioner has no power to entertain said appeal, nor did he appoint the board of arbitrators until more than five days after the annual school elections, said annual meetings were April 7, 1903, said board appointed on April 18, the day the board met, and without notice to the several districts and without chance to object to the board as constituted.

"Third. That said board of arbitrators was without authority to act except to dismiss the appeal; that all the proceedings before said board on said appeal were illegal and void.

"Fourth. That said board was a judicial body, none of the members of said board either before or after entering upon the discharge of his official duties as a member thereof was sworn, but that each and all acted therein without being under oath.

"Fifth. That the witnesses before said board were not sworn as the law directs.

"Sixth. That by the proposed change of the boundary lines for the formation of said pretended consolidated district, leaves original District No. 3, township 44, range 33, containing within its remaining limits by actual count less than twenty pupils of school age, and this was well known to said commissioner and said board of arbitrators.

"Seventh. That by the action of said board in changing the boundary lines of said two and part districts, said district No. 5, township 45, range 33, had been destroyed and annihilated and has been left without territory.

"Eighth. That the notice of annual meetings in said districts did not properly give notice of changing boundary lines.

"Ninth. That the notice of the election of change

of boundary lines should have been as comprehensive as the petition for such change, but the notices in none of said districts were sufficient to submit to the voters the question of change of boundary lines.

"Tenth. That from petition to the clerks and notices posted the voters were unable to tell whether they were to vote on consolidation of districts, change of boundary lines, or to attach and detach portions of districts; in some districts the notice was for one thing, in other districts for another.

"Eleventh. That the pretended appeal in matter of the vote of the detached portion of District No. 3, township 44, range 33, was made by parties having no interest in the question of detaching District No. 11-44-33.

"Your relators therefore pray for leave of the court to file an information in the nature of a quo-warranto against the defendants herein, compelling them to appear before this court and show by what authority they assume to act in the capacity of school directors as herein set forth, and failing to do so, that this court issue a writ of ouster against them and each of them forbidding them, and each of them, from acting as such school directors and for such other and further orders and decrees touching the premises as may be just and proper, and for the costs of your relators in this behalf laid out and expended.

"GIVEN & GLENN and C. W. SLOAN,
Attorneys for Relators.

"State of Missouri, County of Cass, ss.

"C. H. VonVolkenburg and G. A. Rose, beng sworn on oath, say that they are relators in the above cause, and that the allegations set out in the above and foregoing petition are true.

"C. H. VONVOLKENBURG,
"G. A. ROSE.

"Subscribed and sworn to before me this 5th day of June, 1903.                    C. C. BUNDY,
                                     "Clerk."

In obedience to the request of the foregoing petition leave was granted to file the information which was filed and is as follows:

"Be it remembered that D. C. Barnett, prosecuting attorney for the said county, who, in this behalf prosecutes for the State of Missouri, comes here into the circuit court of Cass county, Missouri, and for the State, at the relation of C. H. VonVolkenburg, Andrew Alderson, G. A. Rose, J. S. Craycroft and J. H. Powell, resident taxpayers of School District No. 5, township 45, of range 33, Cass County, Missouri, according to the statutes in such cases made and provided, gives the court to understand that it is provided by the statutes of the State of Missouri, that there shall be chosen and acting in all school districts, other than those of city, town and village schools, three directors, whose duty it is to perform all the duties of said office pointed out by the statutes of this State in the management of the public schools in the district for which they are elected; that said office is a public office of great trust in the administration of our public school system, and in the education of the youth of the State and of said District No. 5; that relators C. H. VonVolkenburg and Andrew Alderson and defendant Harvey Corey are the elected and qualified directors of said District No. 5; that on the 26th day of May, 1903, the said defendants and each of them, did use and exercise, and from said time to the exhibiting of this information, have used and exercised, and still do use and exercise, without any legal warrant, grant or right whatsoever, the office and authority over a territory including said District No. 5, of school directors, and for and during said time aforesaid have there claimed, and still do

claim without any legal warrant, grant or right whatsoever, the office of school directors, of a pretended district, including within its boundaries the whole of said District No. 5 aforesaid, in the county of Cass and State of Missouri, and to have and use and enjoy all the rights, liberties, privileges, and franchises to the office of school directors of said district belonging and appertaining, which said office, rights, liberties, privileges and franchises they, the said M. B. Job, P. R. Brown, Robert Laffoon, William Edelen, E. D. Noyes and Harvey Corey, for and during all the time last aforesaid, without any legal warrant, grant or right whatsoever, has usurped, and still do usurp at the county of Cass aforesaid, in contempt of and to the great damage and prejudice of the authority of the State of Missouri.

"Whereupon the said prosecuting attorney in this behalf and at this relation prosecutes for the State of Missouri, and prays the consideration of the court here in the premises, and that due process of law may be awarded against the said M. B. Job, P. R. Brown, Robert Laffoon, William Edelen, E. D. Noyes and Harvey Corey in this behalf to make answer by what authority they claim to have, use and enjoy the rights, liberties and privileges and franchises aforesaid.

"D. C. BARNETT,

"Prosecuting Attorney for Cass County, Missouri.

"GIVEN & GLENN and CHAS. W. SLOAN,

"Attorneys for Relators."

There were numerous motions filed and orders made preliminary to the trial of the cause, but as they have no bearing upon the merits of this controversy we deem it unnecessary to make further mention of them in this statement. The amended return and answer of the respondents upon which this cause was tried was as follows:

"Now come M. B. Job et al., protesting that the information aforesaid is not sufficient in law and ask to go hence and recover their costs.

"Respondents further answering the information and writ herein and by way of return and answer to same deny each and every allegation in same and having fully answered pray that the court adjudge that they go hence and that the information be dismissed and the writ quashed and that respondents recover their costs.

"Respondents further answering deny that the relators are duly elected, qualified and acting directors of District No. 5, Township 45, Range 33, as alleged in the information; deny that the respondents are usurping the office of the directors of district number five, deny that there is a district number five, as alleged in the information.

"Respondents aver that they are duly elected and qualified and acting school directors of the school district of Cleveland, Cass county, Missouri, and have been acting as such directors since the —— day of April, that on the 7th day of April or May, 1903, the school district of Cleveland, Mo., and all the legally qualified voters of said district assembled at the voting place in said district pursuant to notices previously given according to law, that on said date the said legally qualified voters at said election voted for school directors of said school district and that all of the votes cast at said election were cast for the respondents for school directors for the ensuing term and that they were declared elected and duly qualified and are acting as such and have been so acting since said date and are legally elected, qualified and acting school directors of said school district and no other, and are not usurping the office or rights of the relators or any one.

"The respondents further answering say that the

relators are not entitled to maintain this suit for the following reasons, to-wit: That if there is any irregularities or insufficiencies in any of the proceedings, notices or otherwise in the formation of said district mentioned in the relators' petition, of which the respondents are officers, that all of the relators and legally qualified voters in all of the school districts affected as set out in the petition met at the regular annual school meeting at the usual time and meeting place in their several districts; that prior to said meeting and voting, a petition was presented to the clerk and board of directors of each of the four old districts, which petition was signed by the required number of legal signers for each of the said districts, desiring the formation of new districts and change of boundary of the old districts, in said petition set forth; that the clerk of each district to be affected by the proposed change posted a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting aforesaid, as required by law, and at said meeting after electing the necessary officers for the purpose of voting on the different propositions involved in said question of formation of a new district or districts and changing the boundaries of the old and adding them onto the new, and at said election said proposition was duly put and voted upon according to law, these relators voting thereat, and taking part therein, and that all of the legally qualified voters of the several districts so met and took part and voted upon the proposition, all of which are embraced in the relators' petition, in which they now seek to have annulled, wherefore the respondents say the relators are estopped and precluded from denying the validity of their own acts, or the sufficiency of the notices calling them to vote upon the proposition at said date.

"The respondents further aver that after voting

upon the proposition of the boundary of the several school districts on the 7th day of April, 1903, that part of the school districts voted in favor of the change, and a part of them against the change and that there was an appeal duly taken to the county school commissioner as provided by law for the purpose of having same ascertained, and that a commission was duly appointed and qualified and that the said commission so appointed after giving all due and lawful notices did meet at Harrisonville, in Cass county, Missouri, on the — day of April, 1903, and proceeded to hear the evidence and to investigate the proceedings in respect to the proposed change and alteration of the lines of the districts and the formation of a new district, now known as the Cleveland district, and after a full investigation and hearing the said commission decided unanimously in favor of the adopting of the new district as voted upon and the same was duly ordered upon said date, wherefore the said Cleveland district of which these respondents are the officers was duly established according to law.

"That all of the relators herein and all of the taxpayers and voters of said school district were present, and relators were present in person and by counsel, and participated in the proceedings changing the boundaries of the said old districts of which Cleveland district is one.

"Wherefore, they are estopped from now denying the validity and legal existence of said new districts and of said Cleveland district, or the right of respondents to act as its officers, or the validity or regularity of the said changing of the boundaries of said districts.

"The respondents further aver that immediately upon the formation of the said new district of which the respondents are the officers, which the commissioners established the same on the ——

day of April, 1903, the relator and D. C. Barnett, the
prosecuting attorney, knew that said new district of
which these respondents are the officers were negotiat-
ing for and endeavoring to secure a loan of five thous-
and dollars, for the purpose of building a school house,
in said district, of which these respondents are the
officers formed as aforesaid and that immediately up-
on the formation of the said district on April, or about
April, 1903, the relators applied to D. C. Barnett, pros-
ecuting attorney aforesaid and to the court, to-wit, W.
L. Jarrott, the judge of the circuit court of the county
of Cass, for permission to bring *quo warranto* proceed-
ings to investigate the right by which the said district
was formed or the officers were elected, and that the
said D. C. Barnett, prosecuting attorney, aforesaid,
signed the information filed in this cause for the re-
lators, that they proceeded at the said time, and also
the judge of this court signed the said information
giving his permission in that way for proceedings to be
instituted; that the court was in session at said time,
being May term, that the said relators withheld the
said information and withheld the proceedings in this
case well knowing that negotiations were going on for
said loan, and that said loan was being negotiated, and
that the said loan was finally secured for the said dis-
trict in the sum of five thousand dollars, in that the
said money was loaned that is the bonds were duly
issued and sold to Cash Blackburn and he now holds
the five thousand dollars of bonds for which the said
money has been paid to said district, wherefore he has
become an interested party, and necessary party to the
determination of this cause; also that said relators
never had the said proceedings instituted until after
the said bonds had been issued and negotiated and sold,
withholding the same with a full knowledge of all the
facts, and that said bonds were being issued and placed
upon the market for sale, and that after the said bonds

had been so issued and placed upon the market for sale and sold and the district received the money from the said Cash Blackburn, then the relators filed the information in this cause on the —— day of September, 1903; that by reason of the facts aforesaid, the relators are guilty of such laches as to not entitle them to be heard in this proceeding.

"Respondents for another and further defense herein state that by reason of the laches of the relators and of the delay in filing the said information that a levy of school tax has been duly made against the property-owners and the property in said school district and that the same was duly made since the relators have gotten permission of the said prosecuting attorney, to file the information in this cause, and that the said tax has been by the clerk of the county court duly extended on the tax books of said county and that the same is now in the hands of tax collector for collection, and that by reason of said delay and laches of the relators the rights of the district aforesaid and of all the districts affected by reason of this action have been prejudiced and that the relators are not now entitled to be heard.

"The respondents further say that on or about the —— day of August, 1903, the directors of said school district of which respondents are officers entered into written contract for the hiring of teachers and did hire teachers for the school district for the ensuing year, and that the relators well knew this fact at the time, wherefore relators are guilty of such laches for failing to proceed within a reasonable time, for the investigation if any need be made, in the matters in issue, whereby and by reason of all such laches and the rights of innocent parties will suffer, if the relators be permitted to proceed at this time in this cause.

"The respondents further say that since the permission was given as aforesaid, and prior to the filing of the information by relators, the state school tax has been paid by the state officers to the duly elected and qualified treasurer of said Cleveland district, wherefore relators are guilty of laches.

"Wherefore, the respondents having fully answered ask that this cause be dismissed, and that they recover their costs.

"A. A. WHITSITT,
W. D. SUMMERS,
"Attorneys for Respondents."

The replication of the relators to the foregoing amended return and answer was a general denial of each and every allegation contained in the return and answer. Upon the issue thus presented the trial of the cause before the court proceeded. The testimony as disclosed by the record before us is quite voluminous. We have carefully considered it in detail. We shall not undertake to burden this opinion with a reproduction of the testimony introduced, but it will suffice during the course of the opinion to make such reference as to the tendency of the proof as we may deem necessary. At the close of the evidence the cause being submitted the court rendered the following judgment:

"Now come the parties herein by their respective attorneys and the court having heard the evidence and the argument of counsel for both relators and respondents, and having taken the same under advisement and after having fully considered the same, now in open court renders its findings and judgment herein. It is the finding and judgment of the court that the finding and judgment in this case be in favor of the respondents and against the relators, and that the bill and complaint of relators be and the same is hereby dismissed and that the respondents go hence without de-

lay and recover their costs herein laid out and expended and that costs be taxed against the relators. It is therefore considered and adjudged by the court that relators take nothing by their said cause and that respondents go hence without day and have and recover from and against said relators their costs and charges herein laid out and expended and that execution issue therefor.''

Timely motions for new trial and in arrest of judgment were filed and by the court overruled. The relators in due time and proper form prosecuted their appeal to this court and the record is now before us for consideration.

## OPINION.

The record in this cause discloses that the respondents in this proceeding claim to be the duly elected school directors of the new district organized under and in pursuance of section 9742, Revised Statutes 1899. This section provides:

''When it is deemed necessary to form a new district, to be composed of two or more entire districts, or parts of two or more districts, or to divide one district to form two new districts from the territory therein, or to change the boundary lines of two or more districts, it shall be the duty of the district clerk of each district affected upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting; and the voters when assembled shall decide such question by a majority vote of those who vote upon such proposition. If the assent to such change be given by all the annual meetings of the various districts thus voting, or of the part of the district to be divided, each part voting separately, the

district or districts shall be deemed formed or the boundary lines thus changed from that date; but if all the districts, or parts of districts affected do not vote in favor of such change, the matter may be referred to the county commissioner; and upon such appeal being filed with him, in writing, within five days after the annual meeting, he shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final. When there is an equal division the county commissioner shall give the casting vote. The commissioner shall at the time of the appointment of these members of this board of arbitration notify them to meet him at some convenient place in the county within fifteen days after annual school meeting where the deliberations of the board shall take place and its decision be rendered. But in making such change, the decision in all cases shall conform to the propositions contained in the notices and voted upon at the annual meeting; and the county commissioner shall, on or before the last day of April, transmit the decision to the clerks of the various districts interested, or to the clerk of the district divided, and said clerk or clerks shall enter the same upon the records of his or their respective district or districts; and the said board of arbitration shall be allowed a fee of fifteen dollars, to be paid by the district or districts taking the appeal at the time said appeal is made: Provided, however, that no new district shall be created or boundary line changed by which any district shall be formed containing within its limits by actual count less than twenty pupils of school age, or by which any district shall be left containing within its limits by actual count less than twenty pupils of school age: Provided, however, the resident voters upon any island in any of the

navigable rivers of this State may organize into a school district without being subject to the restrictions in the preceding portion of this section. It is further provided, that in changing the boundary line between the two established districts, one district shall not encroach upon the other simply for the acquisition of territory."

The relators by this proceeding invoke the aid of the extraordinary writ of *quo warranto,* and they with commendable frankness announce that the purpose of this proceeding is "to have the proceedings leading up to and which brought about the claimed consolidation of said original districts declared void and to thereby restore the original status of the old districts." This cause was submitted to the court upon the issues as presented by the pleadings herein indicated. The learned judge presiding at the trial of this cause was, at the time of the hearing, a resident of the county in which this school district controversy arose. The testimony was heard before the court and a finding and judgment for the respondents, and from that judgment the relators prosecute this appeal. Numerous errors are assigned as grounds for the reversal of the judgment of the trial court. We will give them such attention as their importance requires and merits.

## I.

It is insisted by learned counsel for appellants that the relators were entitled to judgment of ouster by reason of the failure of respondents to answer on October 3, 1903, and it is urged that no sufficient answer or return was made to this proceeding until January 25, 1904. In support of this insistence our attention is directed to State ex inf. v. Vallins, 140 Mo. 523. In response to this contention it is sufficient to say that a complete answer to the contention is found in State ex inf. v. Beechner, 160 Mo. l. c. 86. That case clearly marks the distinction between informations in the na-

ture of *quo warranto* at the relation of a private person by leave and proceedings by *quo warranto* instituted by the Attorney-General by virtue of his office. It was there expressly ruled that since 1855 there has been no difference in the rules applicable to filing of amended returns and answers in proceedings of this character in the circuit court and the right to amend an answer in any kind of a civil suit. In pointing out the distinction it was there said: "The plaintiffs rely upon State *ex informatione* Crow, Attorney-General, v. Vallins, 140 Mo. 523, and argue that it was there held that no amendment in a *quo warranto* proceeding was allowable. But the case at bar is very different from the Vallins case. This is a proceeding in the nature of a *quo warranto* at the relation of a private citizen, begun in the circuit court, whereas the Vallins case was a proceeding by *quo warranto* instituted by the Attorney-General, *ex officio*, in this court. This case could only be filed by leave of court, is controlled by the *quo warranto* statute, and the statute relating to amendments in civil cases in a circuit court. The Vallins case was filed by the Attorney-General *ex officio* in this court, without leave, as he had a right to do, was a proceeding by *quo warranto*, which this court had a right under the Constitution to issue, was controlled by the common law practice in *ex officio* cases of *quo warranto*, was not affected by the statute in relation to amendments, for as was shown in the Stewart case [State ex rel. v. Stewart, 32 Mo. 379] that statute applies only to the circuit courts and not to this court, and therefore no amendment was permissible in that case."

The tendency of the rulings of the appellate courts in this as well as in all the other jurisdictions is to give the rules of practice a liberal interpretation to the end that cases may be tried upon their merits. The trial court in the case at bar saw proper to permit the re-

spondents to file an amended answer and return in this proceeding before the commencement of the trial and in our opinion there was no impropriety in the action of the court in this respect. In fact, from the importance of this proceeding, as disclosed by the record, we are of the opinion that the action of the court in permitting the filing of this return and answer was eminently proper.

## II.

It is next insisted by relators that the arbitrators selected by the county commissioner were not sworn and that the witnesses testifying before the arbitrators were not sworn and therefore the finding in that proceeding was void. This same question was in judgment before this court in State ex inf. v. McClain, 187 Mo. 409. It was there expressly ruled by this court "that the statute does not require them to be sworn, and only requires that they shall be disinterested taxpayers of the county. This was evidently considered by the lawmakers a sufficient assurance that they would faithfully discharge their duties. The statute in reference to arbitrations (chap. 71, sec. 4824) requires arbitrators to be sworn. But that is a code unto itself, and so is chapter 154, section 9742, relating to the formation of school districts, a code unto itself, and as there is no legislative intention apparent that the two shall be construed together, and as they are not *in pari materia,* the courts can not so construe them, nor can they write into the statute any additional qualifications for a board of arbitration in such school district matters."

## III.

It is earnestly contended by the appellants that the proceedings leading up to the election held April 7, 1903, by the districts that had the right to vote upon the proposition as to the formation of the new district, and the action of the arbitrators, did not evidence the

regularity required by law to give validity to the judgment of such arbitrators, and it is particularly insisted that the notices were insufficient and that it was essential that the petition and notices should be explicit and comprehensive in the propositions submitted and that it was imperative that the disposition of the school house and other property of the old district should be included in the propositions to be voted upon.

We have carefully analyzed the petition and the notices disclosed by the record, and we are unable to give our assent to this contention of the appellants. The record in this cause discloses that the petitions submitted to the clerks were attached to the notices required to be given by the clerk of the annual meeting and in our opinion these notices thus given and posted by the clerks gave sufficient information to the voters of the school districts as to the propositions upon which they were called upon to vote. As was said in Mason v. Kennedy, 89 Mo. l. c. 30, "The important thing for the voter in each district to know, was how his district was to be affected by the creation of the new district [or by change of boundary] and what particular territory his district would lose in the creation of the new one [or by changing said boundary line]. Of all this the notices and petitions fully informed the voter, and this was sufficient."

## IV.

It is next contended that the proceedings to organize the new school district were without force and effect, and therefore void, for the reason that the petitions were not signed by ten qualified voters residing in each district affected. Under the provisions of section 9856, Revised Statutes 1899, it is made a part of the duty imposed upon the State Superintendent of Public Schools to distribute copies of the law relating to schools, accompanied with instructions for the carry-

ing into execution of such laws, all of which is required to be printed in a separate volume. In obedience to the requirements of that section, the State Superintendent sent out for the guidance of all the school districts in this State his interpretation of the particular provisions of section 9741, which is now in judgment before us, and doubtless numerous school districts of this State, whenever necessity required, have been guided by such interpretation. The instructions to the school districts upon the proposition now before us, were as follows: "When it is desired to form a new district or to change the boundary lines of two or more districts, the first step is the preparation of a petition clearly setting forth the change desired, which petition must be signed by at least ten qualified voters, 're-siding in any district affected thereby.' It is not nec-essary that the voters all reside in the same district—part may reside in each district, but every signer must reside in some one of the districts affected by the pro-posed change. As many petitions should be prepared (all alike) as there are districts affected, and one peti-tion be presented to the clerk of each district affected. The law makes it the duty of the clerk, without any ac-tion of the board of directors, upon receipt of the pe-tition to post a notice in at least five public places in the district of which he is clerk, fifteen days prior to the time of the annual meeting. A failure to do this sub-jects the clerk to a fine of not exceeding one hundred dollars."

Now, while it is true that the interpretation as given by the State Superintendent to this section would not be conclusive upon the courts who are called upon to interpret it in accordance with the well-settled rules of construction, yet we do say that the practical con-struction given this law by the officers whose special duties imposed upon them the proper administration of the school laws of the State, is entitled to great

weight when the law which they have had occasion to construe is called in question before the courts. We have carefully considered this section and our conclusion is in harmony with the interpretation of the State. Superintendent as herein indicated.

It will be observed from the language employed in the section that it is not essential that the petition should be signed by ten qualified voters residing in each district affected. The section provides that "when it is deemed necessary to form a new district, to be composed of two or more entire districts, or parts of two or more districts, etc., *it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters,*" not residing in each district affected, but "*residing in any district affected thereby.*" It will be noted that when the lawmaking power was designating the person who should receive the petition, it designated the district clerk of each district affected, but when treating of the sufficiency of the petition which was received by such clerk it did not limit the qualification of the voters to sign the petition to residents of each particular district, but simply required, upon the reception of a petition signed by ten qualified voters residing in any district affected thereby, to give notice.

We are unwilling to disturb the practical construction given this statute by those whose duties impose upon them the proper administration of the school laws of this State.

## V.

It is contended by appellants that in the proceeding to organize the new district there was no disposition of the school property belonging to the old district, which is provided for by section 9744, Revised Statutes 1899, and it is also insisted that the notices

and petitions made no reference to or disposition of the part of district 3-44-33 not included in the boundaries of the new district organized.

An examination of section 9744, supra, will demonstrate that it is only essential to embrace the disposition of the property in the old district when it is made known that the new districts intend to surrender to the old district all claim thereon for their share of said property. In this proceeding there was no surrender to the old district of any claim that the new district might have upon the property of the old district, therefore it was not necessary to embrace that in the notices. As to the other proposition, it is clear that the notices and petition did undertake to dispose of the portion of district 3-44-33 which was to be detached and not taken into the new district, and the report and finding of the arbitrators clearly shows that the notice and petition did embrace such detached portion of the district and their finding was that it be attached to district 11, West Line district. A casual reading of the report of the arbitrators and their finding and conclusions upon the matters submitted to them will demonstrate the correctness of this conclusion.

## VI.

It is next insisted that the report of the arbitrators does not harmonize with the scheme of the election and question submitted at the election of April 7, 1903. Also this inquiry is made by learned counsel for appellants: "Was the proceeding for change of boundary line, consolidation to establish city school, or was the question in district 3-44-33, to attach or detach portions of the district, or what?"

It is sufficient upon this proposition to say that the report of the arbitrators speaks for itself, and it is made manifest from that report that this entire proceeding was predicated and inaugurated in pursuance

of section 9742, supra. The lawmaking power mani-
festly had in view by the enactment of section 9742 the
prompt settlement of all controversies that might arise
in the administration of the school laws of the State;
therefore by the provisions of this section, when a dis-
pute or difference of opinion arises between the dif-
ferent districts or parts thereof affected by changes
sought to be made, under the provisions of the section,
these disputes are referred to the county commissioner,
who, in pursuance of the statute, appoints four disin-
terested men, resident taxpayers of the county, who,
together with himself, constitute a board of arbitrators,
and their decision upon the questions in dispute is a
finality. It is clear that under the provisions of this
section   this   court,   by the writ of *quo warranto,*
would not be authorized to review the error of judg-
ment by such board of arbitrators. If the record dis-
closes that the board of arbitrators acquired jurisdic-
tion to determine the questions of difference submitted
to them and they have rendered a judgment upon such
questions, in the absence of a showing that the judg-
ment itself was procured by fraud, then the decision
of the board of arbitrators upon the questions of dif-
ferences submitted to them becomes conclusive. As
was said in State ex inf. v. Fleming, 158 Mo. l. c. 563,
where this court had in judgment the extension of the
boundaries of a municipal corporation, that "the ac-
tion of the county court in that matter was judicial,
and its error, if error it made in judgment, cannot be
brought to this court for review by the writ of *quo war-
ranto. Quo warranto* is, in no sense, a writ of correc-
tion or review. To assail an order of the county court
in the matter of incorporating a city or town; or to dis-
turb the result of its judgment, through the office of
the writ of *quo warranto,* all the essential infirmities
thereof, and iniquities therein, resulting from the man-
ner of its procurement, or the fraud of the court, must

be alleged and proven with the same strictness that would be required in a bill of equity having for its object the annullment of the final judgment of any court of record of the State, brought about by fraud or collusion.''

The rule as applicable to this subject was very clearly and correctly announced in State ex rel. v. Gibson, 78 Mo. App. 170, and that was a case involving the powers of the school commissioner under a statute substantially the same as the present one, and the court in that case thus announced the law: ''As to whether or not the school commissioner had 'sufficient evidence before him' to justify his action in changing the boundary line between districts numbered 2 and 6 we have nothing to do in this proceeding. The statute contemplates a mere informal investigation by the commissioner as to the propriety of the changes. Having acquired jurisdiction of the matter, he is directed to 'proceed to inform himself as to the necessity of such proposed change, and his decision shall be final.' The record here shows that a dispute, or difference of opinion, had arisen between the different districts, or parts thereof affected by the proposed changes; that these matters were referred to the respondent as county commissioner; that he proceeded to and did investigate and decide; and his decision therefore must be treated as a finality.''

That the record in the case at bar discloses that the board of arbitrators had jurisdiction to determine the dispute submitted to them, in our opinion, is too clear for discussion. It is plain from the exhibits of the petition and notices submitted to the clerks of the various school districts affected by this proceeding that the voters of the districts had ample information to indicate to them the propositions to be voted upon and to intelligently cast their votes upon such proposition.

205 Sup—3

The record clearly discloses that an election was held in the districts. It further appears that all districts affected by the change sought in the proceeding did not vote in favor of such change and that by reason of the election held in the districts there was a difference or dispute to be settled, and that such matters were referred to the county commissioner, and that he took the appropriate steps, as is indicated by the record, to determine the matter in accordance with the provisions of the statute. While the statute controlling and regulating the public school system of this State and providing for the organization of school districts and the forming of new districts, and the change of boundary lines in other districts, should be substantially complied with in order to affect the purpose sought under the law, yet the proper and prompt administration of such law is of such paramount importance to the public, that the provisions of the statute providing for the settlement of disputes arising in the organization of school districts or the forming of new districts should receive at the hands of the court a reasonable and liberal construction.

It is but common knowledge that matters pertaining to the interests of the public schools in nearly all the districts of this State rest with plain, honest, worthy citizens not specially learned in the law, and if we are to look at all times for a strict and technical compliance with the statute, then we confess that numerous districts in this Commonwealth would fail of their purpose, for the reason their organization did not meet such strict and technical requirements. Under our public school system and the law regulating it new school districts are constantly being formed and old ones divided and changed; therefore, what was said by this court in State ex rel. v. Town of Westport, 116 Mo. l. c. 595 (in which case it was sought to annul the incorporation of a municipality) may be very appro-

priately applied to the case at bar. It was there said: "Towns and cities now spring up like magic as it were, and in a short time assume all the privileges and franchises pertaining to and incident to such municipalities, at the same time assuming the burdens of taxation for their improvement and advancement. Before the court should grant the writ in this case, it should scrutinize very closely all the proceedings, and be fully satisfied that an apparently clear case is made out against the organization of the city, and the extension of its limits, as the result of the action it may take in the case, if against the city, or the extension of its limits, must prejudicially affect the rights and interests of the State as well as creditors of the city."

We have in this case the finding and judgment of the board of arbitrators settling this school controversy, which under the provisions of the statute, and in the absence of fraud in the finding and judgment itself, became conclusive, and in the meantime the new school district was organized in pursuance of such judgment and finding of such arbitrators, a board of directors were elected, made levy for taxes and provided for school; had plans drawn for central graded school building; held election for the issue of bonds and the same was carried and five thousand dollars in bonds issued and registered; teachers employed and arrangements for temporary quarters for holding school while the new building was being built, were made and the school began. This proceeding, which seeks the nullification of all that was done by this new district, was instituted in the county where the district was formed; was tried by an esteemed and learned judge who resided in the same county where this school controversy originated; he heard all of the testimony and his finding and judgment are in harmony with the conclusions reached by the board of arbitrators. The relators have fully had their day in court; they

were present in person and by attorney before the board of arbitrators; no objections or protests as to the qualifications or character of the board selected; no extension of time requested before proceeding with the questions before the board; they were present, as the record discloses, in the trial in the case at bar and were fully heard. Under this state of facts we are unwilling to disturb the judgment of the trial court.

Entertaining the views as heretofore indicated upon the propositions disclosed by the record, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.