SCHOOL DISTRICT NO. 16, Appellant, v. NEW LONDON SCHOOL DISTRICT, Respondent.

St. Louis Court of Appeals, March 3, 1914.

1. SCHOOLS AND SCHOOL DISTRICTS: Change of Boundary: Construction of Statute. Section 10837, Revised Statutes 1909, relating to the settlement of controversies between school districts relative to a proposed change in their boundary lines, is to be liberally construed, and substantial compliance with its provisions will suffice.

2. ——: ——: Status of Arbitrators. The board of arbitrators appointed, pursuant to section 10837, Revised Statutes 1909, to settle controversies between school districts relative to a proposed change in their boundary lines is not a court nor a tribunal exercising judicial power, as the terms "court" and "judicial power" are employed in the Constitution, but is a mere board of commissioners authorized to exercise a discretion with respect to the subject matter committed to it.

3. ——: ——: Proceedings Before Arbitrators: Evidence Required. In a proceeding before arbitrators appointed, pursuant to section 10837, Revised Statutes 1909, to settle a controversy between two school districts relative to a proposed change in their boundary lines, it is not essential to the validity of the award of the board that evidence as to compliance with the statutory prerequisites to the changing of boundary lines be introduced, since the statute contemplates merely an informal investigation by the board as to the propriety and necessity of the change.

Appeal from Ralls Circuit Court.—*Hon. William T. Ragland*, Judge,

AFFIRMED.

*E. L. Corwine* for appellant.

(1) It is the duty of the board of arbitrators to consider the necessity of the proposed change. R. S.

1909, Sec. 10837. (2) A valid election upon sufficient petition and notice is necessary in each district to be affected by the proposed change before board of arbitrators has authority to consider an appeal. School District v. Smith, 90 Mo. App. 215. (3) Petition for appeal is the document upon which board of arbitrators acts, and it must show all necessary jurisdictional facts. State ex rel. v. Andrae, 216 Mo. 617. (4) *Certiorari* brings up only the judgment of the board of arbitrators, hence is not an adequate remedy. School District v. Pace, 113 Mo. App. 134.

*R. F. Roy, Ben E. Hulse* and *Jack Briscoe* for respondent.

(1). The petition to the county superintendent for an appeal to the board of arbitrators stated all the facts necessary to show a valid election in both the districts and to show jurisdiction in the board of arbitrators. It shows that the petition for change was presented to the clerks of both the districts affected fifteen days prior to the annual school meeting, and that the notice was properly given in the defendant district. It also states that the proper notices to be posted in the plaintiff district were prepared and presented to the clerk of that district fifteen days before the annual school meeting. From the fact that the petition for the change was presented to the clerk of the plaintiff district in due time, the law will presume that the clerk of that district did his duty and posted the notices. State ex rel. School District v. Andrae, 216 Mo. 617. (2) Appellant has no right to contend in this court that the petition for appeal in this matter was insufficient so far as lack of signature is concerned, for the petition concedes that such petition "signified" or "meant" that it was an appeal of the defendant district. The Kansas City Court of Appeals said in the State ex rel. v. Sexton, 151 Mo. App. 517, "that

it would be most unjust to require technical exactness in these matters.'' It was held in State ex rel. v. Job, 205 Mo. 1, that the statute should be liberally construed, and this court laid down the same rule in School District No. 58 v. George W. Chappel et al., 155 Mo. App. 498.

NORTONI, J.—This is a suit to set aside the award, or judgment, it may be, of a board of arbitrators, erected under the school laws, to determine a controversy between school districts, touching a change of boundary lines. The finding and judgment were for defendant and plaintiff prosecutes the appeal. Neither fraud, accident nor mistake is averred in the petition and it may be the proceeding is anomalous. But be that as it may, we shall not pause to consider it, for the case may be properly disposed of on the theory on which it was tried and is presented here.

It appears that both plaintiff and defendant are incorporated public school districts under the laws of the State. Plaintiff district No. 16 is a rural school district in Ralls county, lying immediately adjacent to the city of New London, the county seat. Defendant, the school district of New London, is commonly known as a town school district and embraces that city. It was desired to change the boundary lines between these two districts, which were adjoining, so as to include a parcel of the territory situate within plaintiff district No. 16 in defendant New London district. The proposition to change the boundary lines and incorporate some of the territory of plaintiff district into defendant district was voted upon at the annual school meeting held in the school districts on the first Tuesday in April, 1910. The vote in plaintiff district was unanimous against the change, while the proposition carried by a sufficient majority in defendant district. One of the interested parties—that is, plaintiff district—having voted against the proposed change, the matter was

promptly referred, within five days after the election —that is, on April 8—to the county superintendent of public schools, as by an appeal being filed with him in writing on the part of the New London, or defendant, school district. Upon such appeal so being filed with the county superintendent of public schools, as is provided in section 10837, Revised Statutes 1909, that officer proceeded to and did immediately appoint four disinterested men, resident taxpayers of Ralls county, to act and to constitute together with himself a board of arbitration to consider the necessity for such proposed change and render a decision thereon. This board of arbitration so constituted assembled at the courthouse in the city of New London on the 18th day of April, 1910, and considered the subject-matter of the controversy, and among other things found that there was a necessity for the proposed change in the district boundaries, so as to exclude the idea that one district was merely encroaching upon the other simply for the acquisition of territory. The board of arbitrators thereupon unanimously ordered a change of boundary lines to be made according to the prayer in the petition and according to the notices posted, etc. All of the members of the board of arbitrators concurred in this finding, award and judgment, if it is to be so called, and accordingly signed the report on April 18, 1910, to be transmitted to the clerks of the two districts. It sufficiently appears that, according to the rule announced in State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561, the board of arbitrators was properly constituted and possessed of jurisdiction over the subject-matter. This is so clear that it is not even necessary to prolong the opinion in discussing it. Indeed, this suit proceeds on that theory, for it seeks to set the award or judgment of the arbitrators aside as if such is valid and sufficient on its face but because of matters in pais, which may be reviewed only in a direct proceeding to vacate that judgment.

School District v. School District.

The petition sets out the essential antecedent facts and then the controversy between the two districts and the appeal to the county superintendent; the matter of the appointment of four resident taxpayers of the county by and to act together with the superintendent as a board of arbitrators; and that this board so constituted assembled at the courthouse in New London, considered the matter and disposed of it on April 18, 1910. It includes, too, and sets forth a copy of the finding and award, or judgment, of the board of arbitrators, so constituted, which is in all respects sufficient on its face, and then prays that the same be set aside and vacated. The reasons assigned for setting aside and vacating the finding, award, or judgment of the board of arbitrators are thus set forth in the petition:

"Plaintiff says that said board of arbitrators did not hear or consider any evidence whatever in support of certain of the findings contained in said decision and judgment, and that, in fact and in truth, no facts nor evidence of any kind upon which to base such findings ever existed in this, to-wit:

"No evidence was heard or considered by said board relative to the posting of notices of the intended submission of the proposition to change the boundary line between said districts, and, in fact and truth, no proper legal notices of such proposed change were ever posted in the plaintiff district.

"No evidence was heard or considered by said board, to the effect that said proposition had been submitted to and voted upon by the voters of said plaintiff district, and, in fact and truth, said proposition never was legally submitted to and voted upon by said district.

"No evidence was heard or considered by said board relative to the necessity of said proposed change, and, in fact and truth, said change was and is absolutely unnecessary, and was sought by the defendant

district for the sole purpose of acquiring territory from the plaintiff district.''

There is evidence by one witness, Emison, to the effect that he does not remember ''of any evidence before the board of arbitrators in that hearing, of notices being posted in Flint Hill school district, or District No. 16. The only evidence introduced before the board of arbitrators was a plat of the territory to be changed.'' There is evidence by another witness, Keach, that ''the only papers he remembers of at the hearing before the board of arbitrators were the petition to appoint the arbitrators and the plat of the land they wanted set off to the New London district.'' This constitutes all the evidence in the record tending to prove that the necessary statutory prerequisites, such as posting notices of the election, etc., were not complied with, and, of course, it amounts to nothing. Neither these witnesses nor any other said that the notices were not actually posted, but they did say such notices were not introduced before the board of arbitrators at its hearing in April, 1910. It is true it does not appear that any witness testified before the board of arbitrators that the proposition had been submitted to and voted upon by the voters of the plaintiff district and it may be conceded that there was no evidence formally introduced before the board of arbitrators that the proposition was submitted to and voted upon by the plaintiff district. But the appeal paper is conceded to have been before the board, and that reveals all the essential jurisdictional facts. And, moreover, no witness gave evidence, as appears from this record, tending to prove that the proposition had not been submitted to and voted upon by the plaintiff district in accordance with the statute. It may be conceded, too, that no evidence was formally introduced before the board of arbitrators relative to the necessity for such proposed change of the boundary line and to the effect that the change was not sought by defend-

ant district for the purpose of acquiring territory from
plaintiff district. After conceding all of these propo-
sitions to plaintiff, the judgment of the board of arbi-
trators may not be vacated because of the failure of
the board to hear evidence, for the statute does not
contemplate that it shall do so, though it may. The
statute (Sec. 10837, R. S. 1909) authorizes the erection
of a board of arbitrators on a proper appeal to it,
as was had in the instant case, which shall consist of
four disinterested men, resident taxpayers of the
county, to be appointed by the county school superin-
tendent "who, together with himself, shall constitute
a board of arbitration, whose duty it shall be to con-
sider the necessity for such proposed change and render
a decision thereon, which decision shall be final." In
view of the fact that this statute contemplates pro-
ceedings on the part of plain citizens, in the interest
of our educational system, without the aid of men
learned in the law, it is accorded a liberal interpreta-
tion. In other words, the courts do not require and
impose technical niceties with respect to the proceed-
ings had in such matters, but rather seek to effectuate
the beneficent spirit revealed, in aid of the efforts of
well-meaning laymen. Because of this, substantial
compliance will suffice. [See School District v. Chap-
pel, 155 Mo. App. 498, 135 S. W. 75; State ex rel. v.
Job, 205 Mo. 1, 103 S. W. 493.] This board of arbi-
trators so constituted to consider and dispose of the
controversy between school districts, is neither re-
garded as a court nor as a tribunal exercising judicial
power, as the terms court and judicial power are em-
ployed in our Constitution, but rather as a mere board
of commissioners authorized to exercise a discretion
with respect to the subject-matter committed to it. In
a well considered opinion prepared by Judge JOHN W.
McELHINNEY, of the St. Louis County Circuit Court,
and subsequent adopted and approved by the Supreme
Court in State ex rel. v. Andrae, 216 Mo. 617, 629, 631,

116 S. W. 561, the character and functions of such a board of arbitrators, together with its method of procedure, is clearly pointed out and defined. The opinion referred to thus states the law on the subject:

"This body provided for in the school law is a mere board or commission, entrusted with the determination of a matter or matters in dispute like any other commission or board, but having no authority to take testimony, to swear or compel the attendance of witnesses, or to do any of the ordinary acts incident to the procedure of courts.

"Their qualifications are that they are to be 'disinterested men, resident taxpayers of the county.' They are not required to be sworn. [State ex inf. v. McClain, 187 Mo. 409.]

"They, with the school commissioner, constitute a 'board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon.' They may consider this question in any way they think proper. There is no course mapped out for them. They may, and no doubt should, investigate for themselves, on their own observation and information, as well as by taking the statements of others who are considered to have better information—that is, they should inform themselves, as the commissioner was required by the previous law, to 'inform himself.' Such are the ordinary qualifications and such the course of procedure of ordinary boards and commissioners, and it does not appear from the law that they are to pursue any other or different course or exercise any higher authority.

"It is argued that the school districts concerned are 'bodies corporate,' and as such are parties to a controversy, having their respective rights to be determined by the decision. This is true. But they are bodies corporate, possessing 'the usual powers of a corporation for public purposes.' [R. S. 1899, Sec. 9739.]

"The Constitution requires that 'the General Assembly shall establish and maintain free public schools.' And, subject to a few restrictions, this power is left to that branch of the government. [Constitution, art. 10, sec. 1 and fol.]

"A division into districts is necessary, and the Constitution expressly recognizes this. How this division shall be made is left to the General Assembly. There is no restriction except the general limitation as to legislative action. That body establishes districts, provides for boards of directors and county and city superintendents, and, under general laws, provides for local self-government in school matters. This is not deemed or considered a prohibited delegation of legislative powers.

"The districts exist for public purposes, under authority of the State. It becomes necessary that boundaries should be changed and new districts should be formed. This is left in the first instance to the people themselves, speaking through their qualified voters. If they disagree, the matter is appealed to the highest school authority of the county, who under the former law informed himself as to the necessity of the proposed change and decided it officially as a school officer, and who under the present law acts officially and in that manner selects and calls to his assistance citizens of the county, resident taxpayers, but disinterested, who consider the matter with him and render a decision. They are local representatives of the State, qualified by their residence and property interests, and selected by an officer on account of their fitness, to discharge a public duty with reference to the determination of a public question in which public interests are concerned.

"No one would contend that the Legislature should itself act directly in defining and changing the boundaries of each district in the State, without delegating this to local authorities, or that, however necessary

a change may be, it can be made only by consent of both districts concerned. We must conclude that the method of appeal to the commissioner for his decision, or for his selection of commission of disinterested and qualified citizens to assist him in forming a decision, is eminently appropriate. And, unless there is some prohibition in the Constitution, it should be upheld.

"It is nothing unusual in the law to provide such matters of public concern, and even when they affect private interests, should be considered and determined by a board or by commissioners. The selection of county seats, the location of public and private roads and drainage districts, the valuation and assessment of homesteads and exemptions are instances. Others may be cited. All these require the exercise of judgment and discretion. But no one could contend that they must be done within and by a court."

From what is said in the opinion above copied, it is clear that the statute neither contemplates nor requires the formal introduction of evidence before the board of commissioners, as it does in a court of law, to the end of revealing that all of the prerequisites essential to changing the boundary line between districts is complied with. It was, therefore, not necessary to introduce in evidence before the board of arbitrators the notices that had been posted by the district clerks pertaining to the election and setting forth the proposition to be voted upon nor the petitions which had been circulated requesting the submission of the proposition at the annual meeting. Neither was it necessary to introduce evidence before the board of arbitrators tending to prove that the change was necessary and not being sought for the mere purpose of the acquisition of territory by one district from the other. The statute contemplates only a mere informal investigation on the part of the board of arbitrators as to the propriety of the change of such boundary line and

touching the necessity therefor. This precise question has been substantially decided in several cases heretofore. [See State ex rel. v. Andrae, 216 Mo. 617, 640, 116 S. W. 561; State ex rel. v. Job, 205 Mo. 1, 33, 103 S. W. 493.]

There is no evidence in the record even tending to prove that the proper petition was not circulated or that proper notices of the election were not actually posted a proper length of time before the vote was had at the annual school meeting in the two districts.

We have thus reviewed the case on the theory it was tried and is presented here, but without deciding that a suit will lie to set aside a judgment, in the absence of an averment of fraud, accident or mistake, and by merely asserting that the facts upon which such judgment, other than by default or confession, is supposed to rest were not developed in proof before the court which gave it.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.