THE STATE ex rel. SCHOOL DISTRICT NUMBER ONE, TOWNSHIP 45, RANGE 3 EAST, Plaintiff in Error, v. J. WILL ANDRAE, CHARLES A. CUNNINGHAM, JOHN P. OSSENFORT, JOHN D. RIPLEY and JOHN ZIMMERMAN.

**Division One, February 25, 1909.**

1. **JUDICIAL MATTER: Constitutional Inclusion.** The Constitution, investing "the judicial powers of the State as to matters of law and equity, in a supreme court, circuit courts," etc., meant such powers as courts and judges exercise; such as are exercised in the ordinary forms of a court of justice, in a suit between parties, with process. It does not include every authority judicial in its nature, which requires the exercise of judgment or discretion.

2. ————: ————: **School District: Arbitration Board.** The statute (Sec. 9742, R. S. 1899), providing that if an attempt is made to change the boundary lines between school districts, and the districts do not agree, a board of arbitration, appointed by the County Superintendent, shall determine the matter, does not create a court, and is not unconstitutional for that it gives said board the power to determine the necessity for the proposed change and to render a decision thereon. The board is a legal and constitutional body possessing the powers which were conferred upon it by said section, and the Constitution expressly gives the General Assembly power to provide for the establishment of school districts.

3. **SCHOOL DISTRICT: Change of Boundary: Appeal: Showing.** The petition addressed to the County Superintendent to settle the dispute over the change of boundary in the two or more districts, should show authority in him and the arbitrators to act; and if it shows that there has been a valid election held in the interested districts upon the question submitted, that some of the districts voted against the proposition and others for it, and that an appeal was taken within five days, he acquires jurisdiction of the matter, and can act.

4. ————: ————: **Notice.** Where the petition for the appeal recites that the clerk of one of the school districts caused five notices containing a copy of the petition for the proposed change in the boundary line "to be posted up in said district in as many public places," but does not recite that notices were posted in the other district, but does recite that the petition was presented to the clerk of said other district, it will be presumed that the clerk did his duty and caused the notices to be posted.

And this presumption is strengthened by the fact that the proposition was voted upon by the legal voters of said other district at the annual school meeting.

5. ———: ———: **Appeal: Within Five Days.** The County Superintendent is not required to keep any records of his proceedings in the case of an appeal to him of the question of changing the boundary lines of two or more school districts; and that being the case, the absence from the record of any recital showing when the petition for the appeal was filed with him is not fatal, but he is presumed to have followed the law, and would not have proceeded with the case unless such petition had been filed within the time.

Error to St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

AFFIRMED.

*J. C. Kiskaddon* for plaintiff in error.

(1) The statutes in question in this case from the first enactment are as follows: Laws 1874, p. 151; R. S. 1879, sec. 7023; Laws 1887, p. 259; R. S. 1889, sec. 7972; R. S. 1899, sec. 9742. (2) *Certiorari* is a direct attack and will reach defects which could not be reached in any collateral proceeding. State v. County Court, 66 Mo. App. 100; State v. Neosho, 57 Mo. App. 198; Railroad v. Young, 96 Mo. 43. (3) And the writ brings up only the record of the inferior tribunal and reaches the defects and irregularities which are apparent of the record, and which are jurisdictional in their nature. State v. Smith, 101 Mo. 174; State v. Woodson, 161 Mo. 452; Hamilton v. Harwood, 113 Ill. 154; Whiting v. Board, 14 Cal. 456; Starr v. Trustees, 6 Wend. (N. Y.) 564. (4) And the facts necessary to confer jurisdiction on the inferior tribunal must affirmatively appear on the face of its record. In such case jurisdiction can not be presumed. The facts essential to the existence of the inferior tribunal must appear. School Dist. v. Burris, 84 Mo. App. 666; State ex rel. v. Denny, 94 Mo. App. 565;

School Dist. v. Smith, 90 Mo. App. 224; School Dist. v. Neal, 74 Mo. App. 553; Cunningham v. Railroad, 61 Mo. 35; Williams v. Kirby, 169 Mo. 628; Anderson v. Pemberton, 89 Mo. 65; Whitely v. Platte Co., 73 Mo. 30; Jefferson Co. v. Cowan, 5 Mo. 234; Zimmerman v. Snowden, 88 Mo. 218; Spurlock v. Dornan, 182 Mo. 250; Railroad v. Young, 96 Mo. 41; Backenstoe v. Railroad, 96 Mo. 492; Fisher v. Davis, 27 Mo. App. 326; State v. County Court, 66 Mo. App. 100; Rousey v. Wood, 57 Mo. App. 651; State v. Neosho, 57 Mo. App. 198; McQuoid v. Lamp, 19 Mo. App. 156; School Dist. v. School Dist., 94 Mo. 612; People v. Goodwin, 1 Seld. (N. Y.) 568. (5) The statement of the jurisdictional facts in the petition filed before the inferior tribunal does not supply defects in the finding of the inferior tribunal. Such facts must have been proved before the inferior tribunal to exist, and such tribunal must have found them to exist, and put such finding in its record. Backenstoe v. Railroad, 86 Mo. 494. (6) The record in this case raises a constitutional question, and therefore the case is in this court. Plaintiff in error contends that the statute under which defendants in error assumed to act is unconstitutional. (7) The provisions of the Constitution to which reference is especially made are the following: Const., art. 6, sec. 1; Const., art 3. (8) The rule *expressio unius, exclusio alterius* is rigidly applied to the construction of constitutional powers. Ex parte Snyder, 64 Mo. 61; Ex parte Arnold, 128 Mo. 264; Heidelberg v. St. Francois Co., 100 Mo. 74; Bank v. Graham, 147 Mo. 257; State v. Bangsch, 170 Mo. 114. (9) A court is a body in the government to which the public administration of justice is delegated. It is a place where justice is judicially administered. State v. Woodson, 161 Mo. 453; Hobart v. Hobart, 45 Iowa 501; Co. Litt., 58a; 3 Black. Com., 23. (10) The Legislature is empowered by the Constitution to delegate certain executive, ministerial and legislative functions to cer-

tain officials and municipal and quasi-municipal corporations, and when it has that power it can so delegate such functions. But there are executive functions which it cannot assume because they are expressly executive, and there is no grant of power to the Legislature to assume them. *A fortiori,* the Legislature cannot delegate judicial functions unless expressly or by necessary implication empowered so to do. State v. Sloss, 25 Mo. 291; State v. Grant, 79 Mo. 128; State v. Washburn, 167 Mo. 691. (11) Is the board of arbitration provided by the statute in question an executive or administrative body? It is clearly not legislative. What does the statute say it must decide? Although the statute does not expressly say so, yet it must be incumbent on the board to decide that all the necessary preliminary steps have been taken to warrant its own existence. The statute does expressly say it must decide "the necessity for such proposed change," and, incidental thereto, it must decide that the change will not leave "by actual count, less than twenty pupils of school age" in either district, and, further, "that in changing the boundary line . . . shall not encroach upon the other simply for the acquisition of territory." It has been held that these boards act in a judicial and not in a ministerial capacity. School Dist. v. Burris, 84 Mo. App. 666; State ex rel. v. Denny, 94 Mo. App. 565. (12) There can be no involuntary arbitration. Arbitration is a matter of contract. 1 Am. and Eng. Ency. Law (1 Ed.), 647. (13) It may be contended that this manner of proceeding has been so long acquiesced in for many years that it would be improper to now hold the statute unconstitutional. No length of usage can enlarge legislative power, and a constitutional provision should not be broken down because of frequent violations or long acquiescence in such violations. St. Louis v. Dorr, 145 Mo. 485. (14) Nor can it be said that either of the parties are remediless. There is no

question in controversy involving the exercise of judicial functions which cannot by statute be referred to some constitutional court of the State. Wonderly v. Lafayette Co., 150 Mo. 654.

*R. H. Stevens* and *D. C. Taylor* for defendants in error.

As District No. 4 was and is directly interested in the result of the proceeding, it stands to reason that it should have been made a party defendant. School District v. Smith, 90 Mo. App. 225; State ex rel. v. Board of Education, 108 Mo. 241. Even if a statute contains no provision for or mention of notice, the law will imply that notice is requisite. Brown v. Weatherby, 71 Mo. 152; Wickham v. Page, 40 Mo. 526; Laughlin v. Fairbanks, 8 Mo. 370. Chapter 154 of the Revised Statutes "is a code unto itself." The courts "cannot write into the statutes any additional qualifications for a Board of Arbitration in such school district matters" is the language of this court, in State ex rel. v. McClain, 187 Mo. 409. In the case at bar it does appear from the affidavit of the arbitrators "appointed by the Superintendent of Public Schools of St. Louis county, Missouri, as members of a Board of Arbitration," etc., that said arbitrators were properly appointed, and that they possessed the necessary qualifications, to-wit: "Disinterested resident taxpayers of said county of St. Louis." And from the written finding of the arbitrators, dated April 15, 1905, it does appear that they met with the Superintendent of Public Schools at the courthouse in Clayton, the county seat of said county of St. Louis, at 10 a. m., on April 15, 1905, being within fifteen days after the annual school meeting, and after hearing all the evidence offered by both of said districts, both for and against the proposed change, "and after duly considering all of said evidence we find that a necessity does

exist for the change as asked for," etc. It also appears from the petition for appeal, or appeal, that the question submitted by the notices was voted on in both of said districts, that a certain number of votes were cast for and a certain number were cast against the proposed change in each of said districts. The appeal, if filed in time, gave the Commissioner or School Superintendent power to act. He evidently found that it was filed within the required five days after the annual meeting. He therefore appointed the Board of Arbitrators, as appears by the affidavit returned, and he evidently found the other and necessary jurisdictional facts, though he made no record thereof, nor was he required to make any. State v. Gibson, 78 Mo. App. 170; Sch. Dist. v. Pace, 113 Mo. App. 141. It is true that the finding of the board does not affirmatively state that the change as made left a district "containing within its limits, by actual count, less than twenty pupils," etc., nor need it so state. If the proposed change would have so reduced the school population of District No. 1 it had its remedy by injunction. The petition addressed to the Board of Directors and the notices as posted both stated the reason for the proposed change. The presumption is that the appeal was filed within the prescribed time. There was no record, nor none required by law to be made, of the date of the filing of the appeal. Nor was any record required to be made by either the Superintendent or the Board of Arbitrators. The statute under which they acted does not even direct that their finding be reduced to writing (though we concede that it should be reduced to writing and signed by the board), but only that they "consider the necessity for the proposed change and render a decision thereon, which decision shall be final." It is not made necessary for the board to disclose in what manner they obtained the evidence upon which they acted. They need have only

informed themselves as to the necessity for the change. State ex rel. v. Denny, 94 Mo. App. 559; State ex rel. v. Job, 205 Mo. 33; School Dist. v. Hodgin, 180 Mo. 79.

GRAVES, J.—At the school meeting in April in the year 1905, an attempt (whether successful or unsuccessful remains to be determined) was made to change the boundary line between two adjoining school districts in St. Louis county. The relator is one of said two, and School District Number Four in Township 45 North, Range 3 East, is the other. After the school election, one district having voted for said change of boundary and the other against it, the matter was taken before J. Will Andrae, the then Superintendent of Public Schools of said county for determination. He is one of the defendants in error herein. The other four defendants in error are the four men appointed by him as a Board of Arbitration under the provisions of section 9742, Revised Statutes 1899. This Board of Arbitration, in a written decision signed by the members thereof, found that a necessity existed for the change of the boundary line in question. The relator then made application to the circuit court of St. Louis county for a writ of *certiorari,* and was granted such writ. Returns were made to the writ, and after the filing of the returns, relator filed its objections thereto and moved for judgment. These both being overruled, final judgment was entered in favor of the respondents in that court, the defendants in error here. Relator filed motion for new trial which was overruled, and in proper time, to complete its record, filed its bill of exceptions. Thereafter, within one year, the pending writ of error was sued out in this court. J. Will Andrae having died before the hearing in this court, and proper suggestions of such death having been made, W. T. Bender, the successor in office of said Andrae, entered his appearance as defendant in error.

The numerous alleged weaknesses in the record of this inferior tribunal, the Board of Arbitrators, are thus set out by relator in its objection to return and motion for judgment:

"Now comes the relator and objects to the returns herein made by the several defendants, and alleges that it appears by said returns that the proceedings of defendants, as Superintendent of Public Schools of said county and alleged arbitrators, are void and that defendants had no jurisdiction to hear or determine or decide the matter in controversy as stated in the petition for writ of *certiorari* filed herein and which petition is made a part hereof, for the following reasons, to-wit:

"It does not appear by any act, record, finding, order or judgment of said alleged board of arbitration:

"1.  That said petition or appeal was filed with or presented to said superintendent within five days after the annual meetings in said two districts.

"2.  That said superintendent appointed four disinterested men, resident taxpayers of said county, to act with himself as a board of arbitration.

"3.  That the other defendants alleged and claimed to be said board were or are disinterested or were or are resident taxpayers of said county.

"4.  That said alleged board met said superintendent at any time or place in said county.

"5.  That said alleged board met within fifteen days after said annual school meeting.

"6.  That any notice of the time and place of said meeting, if any was held, was given to the relator herein.

"7.  That a petition desiring any change of boundary between said districts was given or received by the clerks of either of said two districts fifteen days or more prior to the annual meeting in said districts.

"8.  That any such alleged petition desiring a change of boundary was signed by at least ten quali-

fied voters residing in both or either of said districts.

"9. That any such petition described the change of boundary desired.

"10. That both of the clerks of said districts posted or caused to be posted notices of said desired change in at least five public places in both of said districts at least fifteen days before said annual meetings.

"11. That any notices claimed to have been posted in said districts contained a description of said proposed change of boundary.

"12. That either or both of said districts voted on said proposed change of boundary.

"13. That any vote taken by said districts, or by either of them, did or did not favor said proposed change of boundary.

"14. That the decision of said alleged board of arbitration conforms to the proposition contained in any notice of the said proposed change of boundary.

"15. That the decision of said alleged board of arbitration conforms to the proposition voted on at the annual meeting of either or both of said districts.

"16. That the alleged decision of said board of arbitration defines, sets out or describes the proposed change of boundary between said districts, and that said decision is so vague and indefinite that the rights of the respective districts can not be determined therefrom.

"17. That the proposed change of boundary does not leave in any district, by actual count, less than twenty pupils of school age.

"18. That the proposed change of boundary between said districts is not made simply for the acquisition of territory one from the other.

"19. That any necessity exists for the proposed change or the facts upon which any such necessity is supposed to depend.

"And it further appears that said board of arbitration exceeded its jurisdiction in said controversy, and that said board had no jurisdiction whatever to decide said controversy for the following reasons:

"20. That the statute under which said alleged board was constituted and organized is contrary to and in violation of article VI of the Constitution of the State of Missouri and the amendments thereto.

"21. That said board as a court attempted to act under said statute and by said article of said Constitution the Legislature had and has no power or authority to constitute, authorize, organize or otherwise provide for any courts other than the courts in said article enumerated.

"Wherefore relator asks the court by its judgment and finding to declare and hold the proceedings of said alleged board null and void, and to vacate the same, and to render judgment for costs against said defendants."

The case reaches this court owing to the fact that the constitutionality of section 9742, Revised Statutes 1899, is challenged. The portion of such section so challenged is the part which provides for the determination of appeals by the school commissioner and a board of arbitrators, and reads:

"  .  .  .  But if all the districts or parts of districts affected do not vote in favor of such change, the matter may be referred to the county commissioner; and upon such appeal being filed with him, in writing, within five days after the annual meeting, he shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final. When there is an equal division the county commissioner shall give the casting vote. The commissioner shall at the time of the appointment of these members of

this board of arbitration notify them to meet him at some convenient place in the county within fifteen days after annual school meeting where the deliberations of the board shall take place and its decision be rendered. But in making such change, the decision in all cases shall conform to the propositions contained in the notices and voted upon at the annual meeting; and the county commissioner shall, on or before the last day of April, transmit the decision to the clerks of the various districts interested, or to the clerk of the district divided, and said clerk or clerks shall enter the same upon the records of his or their respective district or districts."

In counties where school supervision has been adopted by vote the name superintendent is given rather than that of Commissioner, but they perform the same duties under this statute.

Defendants in error maintain (1) that the law is constitutional, (2) that District Number Four is vitally interested and should have been made a party to the action nisi, and (3) that the law does not compel either the Commissioner or the Board of Arbitration to keep a record, and that the papers and records set out in the returns are sufficient. Such are the contentions of the parties.

I. We are first met with a constitutional question, and for that reason the cause reaches this court. Hon. John W. McElhinney, the judge trying the cause nisi, filed a written opinion upon this branch of the case, in which opinion we concur. The opinion is full of research, and we shall appropriate it as and for our discussion of this phase of the case. His opinion reads:

"In this case arguments have been presented on the proposition that the provision of the school law referring to the question of the necessity for the proposed separation of the district or change of boundary lines to a Board of Arbitrators gives to a body other

than a court the determination of a judicial matter, and is therefore in violation of section 1 of article 6 of the Missouri Constitution.

"The law as originally enacted in 1874 required that the matter be referred to the county commissioner for final decision, who shall 'inform himself as to the necessity of the proposed change', and his decision thereon shall be final. [R. S. 1879, sec. 7023.]

"Even if this did refer to the county commissioner the determination of a judicial matter, it was not in violation of the Constitution of 1865, then in force.

"By that Constitution it was provided as follows: " 'The judicial power, as to matters of law and equity, shall be vested in a Supreme Court, in district courts, in circuit courts, and in such inferior tribunals as the General Assembly may, from time to time, establish.' [Const. 1865, art. 6, sec. 1.]

"This would seem to authorize the General Assembly to refer to the county school commissioner, as an 'inferior tribunal' for this purpose, the authority to determine such questions as these.

"The provision of the school law, in this respect, continued in force after the change in the Constitution in 1875, and was changed by amendment to its present form in the revision of 1899. [R. S. 1899, sec. 9742.]

"Its validity must be considered in its present form, as governed by the Constitution of 1875. That constitutional requirement is as follows:

" 'The judicial powers of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts.' [Const. Mo. 1875, art. 6, sec. 1.]

"The Constitution also provides for appointment or election of justices of the peace and the continuation of other courts than those named or provided for

in the Constitution, until the expiration of the terms of office of the several judges. [Id., secs. 37 and 42.]

"The 'judicial powers' referred to in the Constitution are those 'as to matters of law and equity.' This means such powers and authority as courts and judges exercise; such as legitimately pertain to an officer in the department designated by the Constitution as judicial; such as are exercised in the ordinary forms of a court of justice, in a suit between parties, with process. It does not include every authority judicial in its nature which requires the exercise of judgment or discretion. [State v. Hathaway, 115 Mo. 36, 48, 49, and cases cited.]

"This body provided for in the school law is a mere board or commission, entrusted with the determination of a matter or matters in dispute like any other commission or board, but having no authority to take testimony, to swear or compel the attendance of witnesses, or to do any of the ordinary acts incident to the procedure of courts.

"Their qualifications are that they are to be 'disinterested men, resident taxpayers of the county.' They are not required to be sworn. [State ex inf. v. McClain, 187 Mo. 409.]

"They, with the School Commissioner, constitute a 'board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon.' They may consider this question in any way they think proper. There is no course mapped out for them. They may, and no doubt should, investigate for themselves, on their own observation and information, as well as by taking the statements of others who are considered to have better information—that is, they should inform themselves, as the commissioner was required by the previous law, to 'inform himself.' Such are the ordinary qualifications and such the course of procedure of ordinary boards

and commissioners, and it does not appear from the law that they are to pursue any other or different course or exercise any higher authority.

"It is argued that the school districts concerned are 'bodies corporate,' and as such are parties to a controversy, having their respective rights to be determined by the decision. This is true. But they are bodies corporate, possessing 'the usual powers of a corporation for public purposes.' [R. S. 1899, sec. 9739.]

"The Constitution requires that 'the General Assembly shall establish and maintain free public schools.' And, subject to a few restrictions, this power is left to that branch of the government. [Constitution, art. 10, sec. 1 and fol.]

"A division into districts is necessary, and the Constitution expressly recognizes this. How this division shall be made is left to the General Assembly. There is no restriction except the general limitation as to legislative action. That body establishes districts, provides for boards of directors and county and city superintendents, and, under general laws, provides for local self-government in school matters. This is not deemed or considered a prohibited delegation of legislative powers.

"The districts exist for public purposes, under authority of the State. It becomes necessary that boundaries should be changed and new districts should be formed. This is left in the first instance to the people themselves, speaking through their qualified voters. If they disagree, the matter is appealed to the highest school authority of the county, who under the former law informed himself as to the necessity of the proposed change and decided it officially as a school officer, and who under the present law acts officially and in that manner selects and calls to his assistance citizens of the county, resident taxpayers.

but disinterested, who consider the matter with him and render a decision. They are local representatives of the State, qualified by their residence and property interests, and selected by an officer on account of their fitness, to discharge a public duty with reference to the determination of a public question in which public interests are concerned.

"No one would contend that the Legislature should itself act directly in defining and changing the boundaries of each district in the State, without delegating this to local authorities, or that, however necessary a change may be, it can be made only by consent of both districts concerned. We must conclude that the method of appeal to the commissioner for his decision, or for his selection of commission of disinterested and qualified citizens to assist him in forming a decision, is eminently appropriate. And, unless there is some prohibition in the Constitution, it should be upheld.

"It is nothing unusual in the law to provide that such matters of public concern, and even when they affect private interests, should be considered and determined by a board or by commissioners. The selection of county seats, the location of public and private roads and drainage districts, the valuation and assessment of homesteads and exemptions are instances. Others may be cited. All these require the exercise of judgment and discretion. But no one could contend that they must be done within and by a court."

With this argument and this conclusion we agree. The board of arbitration mentioned in and provided for by section 9742, supra, is a legal and constitutional body possessing the powers granted to it by said section. This contention of relator is ruled against it.

II. As to the merits of this controversy, the record before us shows the following return made by J. Will Andrae, County Superintendent:

"Now comes J. Will Andrae, School Superintendent, and, in obedience to a writ of *certiorari* issued on the 29th day of April, 1905, by the circuit court of St. Louis county, Missouri, and to me directed, does hereby return: The finding of the board of arbitrators appointed by me and made on the 15th day of April, 1905, and with it a petition of the board of directors of the Orrville School Board asking for the appointment of the board of arbitrators, a copy of the petition of the citizens of the Orrville and Bonhomme school districts to the board of the Orrville and Bonhomme school districts filed April 8, 1905, and the affidavit of the board of arbitrators, all of which papers are a part of the report and finding of the said board of arbitrators."

To this was attached the following papers:

"PETITION OF APPEAL.

"Orrville, St. Louis County, Mo., April 6, 1905.
"To J. Will Andrae, Superintendent of the Public
Schools of St. Louis county, Mo.

"Your petitioners, the undersigned Board of Directors of school district No. 4, township 45 north, range 3 east, in St. Louis county, Missouri, would respectfully represent and show that a petition signed by ten qualified voters of said district 4 and of school district No. 1, in said township and range, a copy of which is hereto attached, marked 'Exhibit A' was, on the 13th day of March, 1905, presented to the respective clerks of said school districts Nos. 1 and 4, asking that the question of changing the boundary line between said districts, as in said petition prayed for, be submitted to the qualified voters of said respective districts at the annual meetings, to be held in said respective districts on Tuesday, April 4, 1905.

"That the district clerk of said district No. 4 caused five notices to be posted up in said district, in as many public places, at least fifteen days before

the 4th day of April, 1905. Which said notices contained a copy of said petition and notified the qualified voters of said district that the question of changing the district or dividing line between said district as prayed for in said petition would be submitted to the qualified voters of said respective districts at the annual meetings to be held in said respective districts on Tuesday, April 4, 1905.

"That at said annual meeting held in said district No. 4 upon the question of changing said boundary line twenty-four votes were cast in favor of the proposed change and one vote against said proposed change.

"That in said school district No. 1 no votes were cast for the proposed change and twenty-three votes were cast against said proposed change.

"Wherefore, the undersigned Board of Directors of said school district No. 4, township 45 north, of range 3 east, would respectfully appeal said proposition to you as Superintendent of the Public Schools of said county of St. Louis, Missouri, and pray that you inquire into and determine, as the law directs, the necessity of said proposed change in said boundary line, and that the same be granted as prayed for in said petition."

(Signature omitted).

"Petition and Notice for Change of Boundary.

"St. Louis County, Mo., March 13, 1905.

"To the Clerk and Board of Directors of School District No. 1, in Township 45 North, of Range 3 East, in the County of St. Louis and State of Missouri:

"You are hereby notified that the petition hereto attached has been received by the clerk and Board of Directors of school district No. 4, in township 45 north, of range 3 east, in St. Louis county, State of Missouri, and is delivered to you by order of the

Board of Directors of said district No. 4, a duplicate thereof remaining on file with me as clerk of said district No. 4.                    WALTERS S. FICKE.

"Clerk of school district No. 4, township 45 north, of range three east, in St. Louis county, Missouri."

"PETITION TO CHANGE BOUNDARY LINE BETWEEN DISTRICTS No. 1 AND No. 4, TOWNSHIP No. 45 NORTH, RANGE 3 EAST, IN ST. LOUIS COUNTY, STATE OF MISSOURI.

"To the qualified voters of School District No. 4, Township No. 45 North, Range 3 East, and of School District No. 1, Township No. 45 North, of Range 3 East:

"The undersigned petitioners, qualified voters and taxpayers of district No. 4 and district No. 1, township No. 45 north, range 3 east, would respectfully pray that the boundary line between school district No. 1, township No. 45 north, range 3 east, and school district No. 4, township No. 45 north, range 3 east, all in St. Louis county, Missouri, be changed so that the following tracts of land be taken from said school district No. 1 and added to said school district No. 4, as follows, to-wit: [Description of the tracts of land, ten in number, the writer omits for brevity.]

"This change of boundary line as above prayed for is not asked for the mere 'acquisition of territory' or the 'acquisition of revenue,' but because the land in question belongs to the patrons of school district No. 4, and the diversion of their taxes to district No. 1 works a grievous hardship and injustice both to the patrons and children of district No. 4. It is also asked for the purpose of bringing into said district No. 4 certain children who now attend the school in district No. 4, because of the convenience thereto.

"Chas. Koeving" and eighteen others.

"Affidavit.

"We, the undersigned, having been appointed by the Superintendent of Public Schools of St. Louis County, Missouri, as members of a board of arbitration to consider the necessity for the change of the boundary line between school districts Nos. one and four in township forty-five north, of range three east, do solemnly swear that we are disinterested resident taxpayers of said county of St. Louis, and that we will do and perform the duties required of us as members of said board according to law and to the best of our ability." (Signatures and jurat omitted.)

"Arbitrators' Decision.

"Clayton, Mo., April 15, 1905.

"We, the undersigned, Charles Cunningham, John P. Ossenfort, John D. Ripley and John Zimmerman, having been appointed by the Superintendent of Public Schools of St. Louis county, as members of a board of arbitration or appeals to consider the necessity for the change of the boundary line between school districts number one and four in township 45 north, of range 3 east, as prayed for in the petition hereto attached, and made a part of this report and finding, assembled at the courthouse in Clayton, the county-seat of said county, at 10 a. m., Saturday, April 15, 1905, and after being duly sworn, as shown by the affidavit hereto attached, together with the Superintendent of Public Schools of said county, heard all of the evidence offered by both of said school districts, both for and against said proposed change, and after duly considering all of said evidence, we find that a necessity does exist for the change as asked for by said petition, and do therefore find that said change should be made, according to said petition, and do therefore sustain the appeal." (Signature omitted.)

These instruments constitute all the records in the office of the County Superintendent and the arbitrators had no records or papers whatever. The motion for judgment upon the returns challenged the sufficiency of these records, and such sufficiency is the question for our consideration. Relator says that there is a failure to show any authority in the superintendent and the arbitrators to act, and therefore their action is a nullity.

We cannot concur in the contention made by the relator. The petition for appeal is the document upon which the superintendent first acts. If this petition shows that there has been a valid election held in the two interested districts upon the question submitted, and that one district voted in favor of the proposition and the other against it, and this appeal is taken within five days, then the superintendent acquires jurisdiction of the matter and can act. Does this petition so show? We think so. It shows that the petition for the change of boundary line (which is good upon its face) was presented to the respective clerks on March 13, 1905; it shows that the clerk of district No. 4 posted up five notices, with the petition attached; that such act was done more than fifteen days prior to April 4, 1905, the date of the annual school meeting; that at such meeting twenty-four votes were cast in favor of the proposition and one vote against it. Thus far, there is no question.

As to district No. 1, the petition only says: "That in said school district No. 1 no votes were cast for the proposed change and twenty-three votes were cast against said proposed change."

It will be noticed that it does not aver that the notices were posted in this district, but it does aver that a vote was taken. It previously averred a proper delivery of the petition to the clerk of district No. 1, on March 13th. Under Revised Statutes 1899, section 9742, it was the duty of the clerk of district No. 1

to post these notices upon the receipt of the petition. It is presumed that this officer did his duty, and the fact that the proposition was voted upon lends color to the view that he did perform his duty. Whilst this averment is not just what it might be, yet we think when the whole context of the appeal paper is considered it is sufficient. These matters must be given a liberal construction. Upon this subject, Fox, P. J., in State ex rel. v. Job, 205 Mo. l. c. 34, has well said: "While the statute controlling and regulating the public school system of this State and providing for the organization of school districts and the forming of new districts, and the change of boundary lines in other districts, should be substantially complied with in order to effect the purpose sought under the law, yet the proper and prompt administration of such law is of such paramount importance to the public, that the provisions of the statute providing for the settlement of disputes arising in the organization of school districts or the forming of new districts should receive at the hands of the court a reasonable and liberal construction. It is but common knowledge that matters pertaining to the interests of the public schools in nearly all the districts of this State rest with plain, honest, worthy citizens not specially learned in the law, and if we are to look at all times for a strict and technical compliance with the statute, then we confess that numerous districts in this Commonwealth would fail of their purpose, for the reason their organization did not meet such strict and technical requirements. Under our public school system and the law regulating it, new school districts are constantly being formed and old ones divided and changed; therefore, what was said by this court in State ex rel. v. Town of Westport, 116 Mo. l. c. 595 (in which case it was sought to annul the incorporation of a municipality) may be very appropriately applied to the case at bar.''

But it is urged that the record fails to show the filing of the petition in appeal within five days, and for that reason there is a failure to show jurisdiction. So far as the record before us is concerned there is no file mark upon this paper, nor did the superintendent keep a record showing the date of the filing. The instrument itself shows the date of April 6, 1905, and the annual meeting was upon April 4, 1905. In abstracting the record, the relator has omitted the jurat to the oath of the arbitrators, the date of which might or might not tend to show the date of the receipt of this petition in appeal. For instance, had the jurat shown the qualification of these arbitrators within five days from April 4th it would have been a strong circumstance, tending to show when the paper was received. Of course they did not have to be appointed within that time, nor did they have to take an oath. [State ex inf. v. McClain, 187 Mo. 409.]

But it has been said that no extended record is required in cases of this kind. Thus in School District v. Hodgin, 180 Mo. l. c. 79, this court said: "The only evidence of the formation and creation of a new school district in this State, when it has been done, as in the case of plaintiff district, out of parts of two or more old contiguous districts, by the action of the county school commissioner and the board of arbitration called to his assistance, is that a decision to so form the new district is made and determined, and thereafter the commissioner, on or before the last day of the following April of that year, transmits the decision to the clerks of the various school districts interested or affected by the formation of the new district, and that said clerks enter the same upon the records of their respective districts. This may be thought a rather vague and uncertain evidence of the corporate existence of so important a public body as a school district, but the statute has not provided nor required anything more definite or formal by way of an an-

nouncement of its formation and creation, or as a record evidence of its right to continued existence as a corporation, and as such the citizens and the courts must recognize it, until its life and authority have been assailed and overthrown by the State in a direct proceeding by *quo warranto,* to accomplish that purpose."

And in School District v. Pace, 113 Mo. App. l. c. 140, the St. Louis Court of Appeals says: "It is contended by respondents that the certificate made by the board of arbitrators and transmitted to the clerks of the four districts affected constituted the entire record of the board of arbitrators. If this question was one of first impression we would be inclined to hold that the record of these tribunals is composed of the petition or petitions presented to the clerk or clerks of the district or districts and the notices posted for the election, for the reason that upon these documents depends the jurisdiction of the arbitrators to hear the appeal and from them only can it be ascertained whether or not jurisdiction was conferred upon the arbitrators to act. The school statutes are silent as to what disposition shall be made of the documents; notwithstanding their importance the statutes make no provision for their custody or perpetuation. The only record the board of arbitration is required by the statutes to make is to reduce its decision to writing, sign it and hand it over to the commissioner, who is required to transmit it to the clerks of the districts affected." The opinion cited and quotes from the Hodgin case, supra.

It is not necessary for the board to disclose by what means it arrived at the decision reached, nor from what, if any, evidence it was deduced. The statute says: "He shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such pro-

posed change and render a decision thereon, which decision shall be final.''

Of this statute, our courts have said that it only meant a mere informal investigation as to the propriety of such change of boundary lines. [State ex rel. v. Job, 205 Mo. l. c. 33; State ex rel. v. Gibson, 78 Mo. App. 170; School District v. Pace, 113 Mo. App. 141.]

If, as appears to be the law, the superintendent is required to keep no records of his proceedings, then the absence of a record as to the filing of the petition for appeal within five days is not fatal, because this official is presumed to have followed the law, and would not have proceeded with the case unless such petition had been filed within time.

The written decision of the arbitrators, when taken in connection with the other document therein referred to and on file with the board of arbitrators, is valid upon its face and fully meets the requirements of the law. So that upon the merits the judgment, *nisi,* was correct, and as we have indicated in the preceding paragraph that such a board had a legal existence under the laws and our present Constitution, it follows that this judgment should be affirmed, and it is so ordered.

All concur.