# SCHOOL DISTRICTS NUMBERED 18, 19, 29 and 30, Appellants, v. LON YATES, Superintendent, Respondent.

### Springfield Court of Appeals, January 8, 1912.

1. **SCHOOLS: Establishing New District: Board of Arbitration: Jurisdiction.** In a proceeding to establish a new school district by taking certain territory from several other districts, under section 10837, Revised Statutes 1909, some of the districts voting against the proposition, an appeal was duly made to the county school superintendent, whereupon he appointed a board of arbitration to consider the formation of the new district. The board found that the new district should be formed. On a writ of *certiorari* it was held that the judgment of the board of arbitration could not be declared void merely because it failed to show that the board was composed of four disinterested resident tax payers of the county.

2. ————: ————: ————: **County Superintendent's Record.** The statutes require no other records to be kept by the county superintendent of public schools upon proceedings taken by him on appeal in cases looking to the establishment of a new school district, except that of the decision of the board of arbitration and so it has been *held* that the record of the award made by the board is the only legal record of their proceedings.

3. **JURISDICTION: Presumption of Regularity.** It will not be presumed that an inferior tribunal or officer has jurisdiction in the first instance, but after jurisdiction is shown, then the presumption follows in favor of the regularity of the poceedings.

4. **CERTIORARI: Office of Writ.** The scope and office of a writ of *certiorari* is to bring up for review from inferior tribunals the records, which go to show the jurisdiction of the tribunal to which the writ was directed and the superior court can only consider such errors and defenses as appear upon the face of the record and which are jurisdictional in their nature.

5. **QUO WARRANTO: Certiorari: Challenging Legality of School District.** *Quo warranto* is the proper remedy to dissolve a school district which has not been legally organized, and by this proceeding the legality of the district may be challenged on account of matter *de hors* the record, which cannot be done by *certiorari*.

Appeal from Webster Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*R. S. Phillips* for appellants.

(1) Nothing will be presumed to be within the jurisdiction of inferior courts and tribunals and their jurisdiction must appear by the record in all cases where it is directly attacked. We find this law laid down in the case of Sutton v. Cole, 155 Mo. 213. "It has long been the settled law in Missouri that the jurisdiction of courts of inferior jurisdiction and of courts that do not proceed according to the course of the common law, must affirmatively appear on the face of the proceedings. State v. Metzger, 26 Mo. 65; Hansberger v. Railroad, 43 Mo. 196; Edmondson v. Kite, 43 Mo. 176; Schell v. Leland, 45 Mo. 289; Iba v. Railroad, 45 Mo. 469; Harris v. Hunt, 97 Mo. 574; Bank v. Doak, 75 Mo. App. 372; Ex parte O'Brien, 127 Mo. 477. (2) Respondent not only failed to certify that the four men were appointed at any time, not only failed to certify that they were disinterested, not only failed to certify that they were residents, not only failed to certify that they were taxpayers, but totally failing to make any certificate about them at all, makes no certificate whatever. State ex rel. v. Wilson, 99 Mo. App. 675; Sutton v. Cole, 155 Mo. 206; Railroad v. Young, 96 Mo. 39; State ex rel. v. County Court, 66 Mo. App. 96.

*J. P. Smith* and *J. E. Haymes* for respondent.

(1) *Certiorari* is not the proper remedy where the legal existence or life of a school district is brought in question. School District v. Pace, 113 Mo. App. 134. (2) In the case of State ex rel. v. Andrae, 216 Mo. 640, the court says, "If as appears to be the law, the superintendent is required to keep no record of his proceedings, then the absence of a record as to the filing of the petition for appeal within five days is not fatal, because this official is presumed to have followed the law, and would not have proceeded with

the case unless such petition had been filed within time. (3) Why should not the same presumption obtain in this case at bar that he had appointed properly qualified members of the board of arbitration. It is declared that this presumption would be the same as to the qualification of the members of the board of arbitration in the case of State ex rel. v. Sexton, 151 Mo. App. 517, for in that case the written finding of the board was almost identical with the finding of the board in the case now before the court and the court upon that matter says: "While the records of the superintendent showing the qualification of the arbitrators was not one required by law to be kept, it, at least, does not controvert the presumption of right acting on the part of the superintendent. (4) The return of the superintendent in this case to the writ does not show that the papers returned by him were all the papers or records pertaining to this case, it only shows they were all he could find among the records of the county clerk and the court upon his return can not say there were not other records or papers showing all necessary jurisdictional facts, should the court believe such showing was necessary. State ex rel. v. Williams, 70 Mo. App. 238. (5) All the more recent holdings of both the Supreme Court and Court of Appeals of our state indicate a more liberal policy and broader view of proceedings relating to the public schools and are more in keeping with progress and justice. State ex rel. v. Job, 205 Mo. 1; School District v. Chappell, 155 Mo. App. 498.

NIXON, P. J.—This action originated in the circuit court of Webster county by a writ of *certiorari* sued out by the appellants, School Districts Numbered 18, 19, 29 and 30, of said county. Upon the quashing of the writ, the relators appealed to this court.

The proceedings which gave rise to the action related to the proposed change of boundary lines be-

tween School Districts Numbered 18, 19, 28, 29 and 30, by which it was intended to establish a new district by taking certain territory from the said named districts and with the territory thus detached to form a new district, pursuant to the provisions of Sec. 10837, R. S. 1909. The petition for the change was duly filed, notices were properly posted, and the question of the formation of the new district was voted on in all of said five districts at the annual meeting in April, 1911. Four of said school districts—18, 19, 29 and 30—voted against the detachment of the territory and the formation of the new district, but district numbered 28 voted for the organization of the new district. An appeal was accordingly duly made under the law to the county school superintendent, as authorized by Sec. 10837, R. S. 1909. The matter of the formation of the new district was in this way referred to the superintendent of public schools of Webster county, the appeal having been filed with him in writing within five days after said annual meeting, and no question is made of the sufficiency of the appeal. Whereupon, he appointed four men to constitute a board of arbitration to consider the formation of the new district and to ascertain whether it was just and necessary that it should be formed. Thereafter, the board met, considered the matters submitted, and rendered the following written decision in favor of the proposed change of districts: (Formal parts omitted.)

· Marshfield, Mo., April 8. 1911.

"We, a board of arbitrators called by the county superintendent, met to consider the formation of a new school district asked for by the following petitioners (naming them). We, the board, find the formation of the new district to be just and necessary, and adjudge that the said district be formed."

Thereafter, the board of arbitration filed another written decision, as follows: (Formal parts omitted.)

"We, the undersigned, being the board of arbitrators appointed by O. P. Keller, county superintendent of schools of Webster county, Missouri, to determine the appeal upon the question voted upon at the annual school meeting, 1911, of School Districts Number 18, 19, 28, 29, and 30, in said Webster county, and wherein appeal from the decision of the voters at said annual meeting upon the question of taking certain territory from said named districts and with said detached territory forming a new district, a description whereof will more fully appear from the paper hereto attached and made a part hereof, do hereby certify that we met in Marshfield, Mo., on April 18, 1911, and after hearing the evidence adduced for and against said proposed change do find that said proposed district should be formed as petitioned for and voted upon at said annual meeting, and that the lines of said named districts should be changed and the parts so detached, as petitioned for and voted upon at the annual school meetings, in said districts, be and the same are hereby formed into a new district in said Webster county, Mo."

It appears that at the time the appeal was taken and at the time the decisions were rendered by the board of arbitration, O. P. Keller was the superintendent of public schools of Webster county. The decision was transmitted to the clerks of the several districts, and its sufficiency is the sole ground of attack made on the proceedings, both in the circuit court and in this court. At the time the petition for a writ of *certiorari* was filed in the circuit court of Webster county, Lon Yates had succeeded O. P. Keller in the office of superintendent of public schools of Webster county, and the writ issued by the court was directed to him. His return to the writ was as follows: (Formal parts omitted.)

"In obedience to the writ of *certiorari*, issued by you to me directing me to certify up the papers in

the above cause, under my official signature, I herewith return all the records and proceedings in the above cause, which records were found by me on file in the office of the county clerk of Webster county, as fully and entirely as I am able to secure them among the papers and records of said proceedings which are on file in said county clerk's office which were filed by my predecessor, O. P. Keller, he declaring to me that he filed all the papers, records and proceedings of said cause in the office of the said county clerk.

"Witness my hand and official signature, this the 6th day of May, A. D. 1911." (Signed)

It appears from this that the records and proceedings contained in the return found in the office of the county clerk and were filed in that office by respondent's predecessor, O. P. Keller. It will also be seen from this return that there is no showing that all of the papers and records in relation to the action of Keller in regard to the appeal and his action in regard to the formation of the new district were in fact filed with the county clerk. Also, that it does not appear that all that were filed are contained in the return of Lon Yates. But, as Yates was the successor in office, and was the county superintendent at the time the writ of *certiorari* was issued and it was directed to him, it was proper that he should make a return to the writ, and the case is heard on the merits as the defective return is not pressed upon our consideration by the parties. The books and papers and records of the office should have been turned over by Keller to his successor in office and not to the county clerk, under the statute. [Sec. 10929, R. S. 1909.] But as Yates was in possession of the papers and made his return, in order to determine this case, no contention being made by the parties on the question, we are not required to discuss whether or

not the appeal should be dismissed because all the papers and records are not shown to have been produced.

The principal objections urged by the relators in this court are that the members of the board of arbitration were never appointed according to law, that no certificate of appointment was made, and that the judgment of the board of arbitration was void upon its face because it fails to show that the board was composed of four disinterested men, resident taxpayers of the county, and that therefore said board had no jurisdiction to act on the appeal. The decision of the board of arbitration recites: "We, a board of arbitrators called by the county superintendent . . ." Also, the report of the county superintendent to the district clerks after the award of the board was made, contained this statement: "I am herewith transmitting to you the decision of the board of arbitrators appointed by me to pass upon the appeal upon the question of taking certain territory from your district, along with the other four districts, . . ." Also, the second, or amended, award of the board of arbitration, contained this statement: "We, the undersigned, being the board of arbitrators appointed by O. P. Keller, county superintendent of schools, . . ." We think these statements are sufficient to show that the members of the board of arbitration were appointed as such by the county superintendent of public schools.

The principal question presented to the circuit court was whether the action of the board of arbitration was without jurisdiction and void because none of the proceedings including what appears on the face of the decision and finding made by the alleged board of arbitration anywhere shows that the members were "four disinterested men, resident taxpayers of the county." As we have said, the circuit court upon

hearing the case ordered that the writ of *certiorari* be quashed, and the relators thereafter perfected an appeal to this court.

The scope and office of a writ of *certiorari* is to bring up for review from an inferior tribunal its records which go to show the jurisdiction of the tribunal to which the writ was directed, and the superior court can only consider such errors and defects as appear upon the face of the record and which are jurisdictional in their nature. No other facts can be reviewed by the court under this writ. [State ex rel. Dalton v. Baker, 170 Mo. 383, 70 S. W. 872; State ex rel. Scott v. Smith, 176 Mo. 90, 75 S. W. 586.] Under these well-settled principles it is apparent that it becomes important to ascertain what records, if any, the county superintendent of public schools is required to keep under the statute. The general rule no doubt is that however informal the proceedings of an inferior tribunal may be, the fact that it is such inferior tribunal makes it necessary that the record of its proceedings should show such facts as give it jurisdiction. [State v. Metzger, 26 Mo. 65.] But the tribunals referred to were courts which were required under the law to keep records of their proceedings, and from the necessity of things the rule declared could not be applied to proceedings of tribunals that were not required to keep such records. The statute requires no other records to be kept by the county superintendent of public schools upon proceedings taken by him on appeal in cases like the present except that of the decision of the board of arbitration. Because of this omission, the Supreme Court in the case of School District No. 35 v. Hodgin, 180 Mo. 1. c. 79, 79 S. W. 148, and the St. Louis Court of Appeals in the case of School District v. Pace, 113 Mo. App. 1. c. 140, 87 S. W. 580, adjudged that under the statutes the record of the award made by the board of arbitration was the only legal record of their proceedings.

Under the statute (Sec. 10837, R. S. 1909), the county superintendent, upon becoming possessed of the appeal, the same being filed with him, in writing, within five days after the annual meeting, "shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final."

The Supreme Court in the case of State ex rel. School Dist. No. 1 v. Andrae, 216 Mo. 617, 116 S. W. 561, had substantially the same questions as are involved in this record under consideration and it determined that the petition addressed to the county superintendent to settle the dispute over the formation of a new school district should show authority in him and the board of arbitration to act, and if it shows that there has been a valid election held in the interested districts upon the question submitted, and that some of the districts voted against the proposition and others for it, and that an appeal was taken within five days, such county superintendent acquires jurisdiction of the matter and can act. Under the principles announced in that decision, O. P. Keller, superintendent of public schools of Webster county, became possessed of jurisdiction to act on the appeal and appoint a board of arbitration and take further steps as provided by the statute. The general rule of law is that after a tribunal or officer has been shown to have once acquired jurisdiction, his official acts under such jurisdiction will be presumed to be regular and in the due discharge of his duty. It will not be presumed that he had jurisdiction in the first instance, but after jurisdiction is shown, then the presumption follows in favor of the regularity of his proceedings. [Baker v. Underwood, 63 Mo. 384; State ex rel. Gracy v. Bank of Neosho, 120 Mo. 161, 25 S. W. 372; Agan v. Shannon, 103 Mo. 661,

15 S. W. 757; Bryson v. Johnson County, 100 Mo. 76, 13 S. W. 239; State v. McCord, 207 Mo. 519, 106 S. W. 27.] This principle was applied in the early case of Sutherland v. Holmes, 78 Mo. 399, which was a proceeding under the law in regard to roads and highways in which the county court was required to appoint freeholders as commissioners to view the line of the proposed road and assess damages caused by the opening of the road. It did not affirmatively appear on the face of the papers in that case that the commissioners appointed by the county court were freeholders, but it was held that such fact would be presumed and that it need not affirmatively appear in the proceedings. In the late case of State ex rel. School Dist. No. 1 v. Andrae, supra, the Supreme Court again applied this rule to the action of the county superintendent of public schools in the appointment of a board of arbitration and held that inasmuch as the law required the superintendent to keep no record, it would be presumed in a *certiorari* case, in the absence of a showing to the contrary, that he had followed the law. The court in that case said (l. c. 640): "If, as appears to be the law, the superintendent is required to keep no records of his proceedings, then the absence of a record as to the filing of the petition for appeal within five days is not fatal, because this official is presumed to have followed the law, and would not have proceeded with the case unless such petition had been filed within time." In that case the award of the board of arbitration contained no statement that they were "disinterested, resident taxpayers of the county." That statement appears in an oath taken by the arbitrators and referred to in the award, but the statute does not require an oath, nor did the Supreme Court regard the one taken in that case as technically a part of the record and attached no significance to such fact. The court said (l. c. 640): "The written decision of the arbi-

trators, when taken in connection with the other documents therein referred to and on file with the board of arbitrators, is valid upon its face and fully meets the requirements of the law.''

In this case, the records and proceedings nowhere show upon their face that the county superintendent acted illegally in the exercise of the jurisdiction conferred upon him by the appeal in the organization of the board of arbitration by the appointment as members of such board persons who did not come up to the statutory requirements of being disinterested, resident taxpayers of the county. The entire records and proceedings in the case are simply silent or negative as to whether the persons appointed as members possessed the statutory qualifications and do not show excess or want of jurisdiction. If as a matter of fact the men so appointed were not disinterested, resident taxpayers of the county, such fact not appearing of record, after jurisdiction had been shown, if the relators wished to challenge the legality of the new district on account of matters dehors the record, they must have chosen a remedy which would allow facts *aliunde* the record to be proven at the trial, and the remedy in such case would be by *quo warranto* and not by *certiorari*, as *quo warranto* is the proper remedy to dissolve a district which has not been legally organized. [School District v. Pace, 113 Mo. App. 134, 87 S. W. 580; Black v. Early, 208 Mo. 281, 106 S. W. 1014.] The Supreme Court in consideration of the vast interests of the state in its schools announced the rule that in school matters where the proceedings are conducted by plain men unlearned in the law, it would be absurd and most unjust to require technical exactness, and that a substantial compliance with the law is all that is necessary. [State ex rel. School Dist. No. 1 v. Andrae, supra.]

Learned counsel for appellants in this case has pressed upon the consideration of this court with great insistency in support of his position the opinion delivered in the case of State ex rel. Smart v. Wilson, 99 Mo. App. 675, 74 S. W. 404, but seems to have overlooked a subsequent decision in the case of State ex rel. School Dist. No. 18 v. Sexton, 151 Mo. App. 517, 132 S. W. 11.

It follows from what has been said that the judgment of the circuit court should be affirmed and it is so ordered. All concur.